JAMES STROUD, BY HIS NEXT FRIEND, CHARLES B. CAUDIE; AND J. A. STROUD, v. SOUTHERN OIL TRANSPORTATION COMPANY.

(Filed 16 June, 1939.)

1. **Negligence § 1—Duty to use due care does not necessarily arise out of any contractual relationship.**

   The duty to exercise due care to avoid injuring another does not necessarily arise out of a contractual relationship, such as master and servant, bailor and bailee, but such duty obtains whenever the circumstances are such that a man of ordinary prudence would apprehend that his failure to use ordinary care and skill would endanger the person or property of another.

2. **Negligence § 3—**

   A person in control of machinery, appliances or equipment is under duty to exercise reasonable care not to expose another to danger in their invited or permitted use for his benefit.

STROUD *v.* TRANSPORTATION CO.

**3. Same: Negligence § 19a—Evidence held for jury as to whether truck driver knew or should have known of dangerous condition of tire he permitted filling station employee to service.**

The evidence tended to show that the drivers of a truck with dual wheels permitted plaintiff, a filling station employee, to attempt to service the inside tire with air, that the circumstances were such that the plaintiff had to put his hand between the tires, and that the flange of the inside wheel flew loose mashing plaintiff's hand and causing the injury in suit. The evidence further tended to show that the inside tire had been driven slack for about twenty miles and that the flange of the inner tire might have been jarred loose from its proper assemblage by bumpings on the irregularities of the road, that this method of servicing the tire was made necessary by the fact that, although the tire had originally been equipped with a long valve stem, it was then equipped with a short valve stem, and the fact that the wheels had been improperly mounted in failing to have the spokes of the wheels opposite each other so as to give access to the valve of the inner tire through the opening between the spokes, and that defendant itself used an air hose with a long nozzle in servicing this type of wheel while plaintiff had to use the short nozzle hose in general use by service stations. *Held:* The evidence was sufficient to be submitted to the jury as to whether defendant's agents had created a dangerous situation and whether they knew, or should have known thereof, in the exercise of due care, and should have informed plaintiff before permitting him to service the tire.

WINBORNE, J., dissenting.

STACY, C. J., and BARNHILL, J., concur in dissent.

APPEAL by plaintiff from *Bivens, J.,* at November 14 Term, 1938, of ANSON. Reversed.

This is an action to recover for personal injuries sustained by reason of the alleged negligence of the defendant.

The evidence taken in the light most favorable to the plaintiff shows substantially that the plaintiff, a boy eighteen years old, was an employee at Bowman's Filling Station on 28 October, 1936, at the time of his injury. John L. McLeod and Lacy Henry, employees of the defendant and operating a truck for said defendant, came to the filling station for the purpose of inflating one of the tires of the truck, which they proceeded to undertake.

The inner tire of the left rear dual wheel had been partially deflated and had been driven in this condition for about twenty miles. The valve on this tire was a short stemmed valve and the outer wheel had been put on so that the valve stem of the inner tire was not readily accessible from outside, or through the spokes. The dual wheels were mounted so closely together that it was difficult to get the hand between them. The air hose belonging to the filling station, connected with the compressed air tank or pump, had a short nozzle or chuck such as was in common use in filling stations of that kind.

The plaintiff had been told by his employer to wait on customers wanting air when he was not otherwise employed. The compressed air apparatus was subject to the gratuitous use of automobilists who desired to use it.

After McLeod and Henry had been engaged sometime in inflating the tire, plaintiff tendered to them his services, which were accepted, and it was explained by Henry that they thought because of the fact that he had a smaller hand he might more easily insert it between the tires, that being the manner in which they were attempting to service the tire. Neither McLeod nor Henry gave the plaintiff notice of any defect about the tire or wheel or its assemblage, and gave him no warning of any danger that might be incurred in performing the service.

Because of the obstruction created by the mounting of the outside rear wheel and the fact that the valve stem was short, it was necessary for the plaintiff to insert one hand between the tires of the dual wheel and the other into and through the opening between the spokes of the outer wheel, so that proper contact might be made and maintained between the air hose nozzle and the valve stem. While engaged in this service the rim flange of the inner wheel flew loose and caught plaintiff's hands between the two tires of the wheel, causing the loss of two fingers on the left hand and badly injuring the thumbs on both hands.

The plaintiff introduced evidence tending to show that trucks of this make and type were originally furnished with a long valve stem, and that short valve stems were subsequently put into use by the defendant, and that these were not as safe. Further evidence was to the effect that the defendant itself, in inflating the tires on its own trucks, used a long air hose chuck, or nozzle, as a safety device.

The judge sustained a demurrer to the evidence, and plaintiff appealed.

*E. A. Hightower for plaintiff, appellant.*
*J. Laurence Jones and J. L. DeLaney for defendant, appellee.*

SEAWELL, J. Under the evidence taken in the light most favorable to plaintiff, did the defendant fail to perform any duty which it owed to the plaintiff?

Such a duty, if it exists, cannot be made to depend entirely upon either of the two relations which it is suggested might obtain between the parties, that is, the relation of bailor and bailee or master and servant, although either relation, if it existed, might present a special phase of the subject and conceivably might affect the application of the rule. Incidentally we find in the present record no evidence of bailment, since defendant's truck was at no time in the exclusive control of the plaintiff

or the filling station operator. Further, it is not necessary to consider the suggested relationship of master and servant, since the question we have asked ourselves may be solved from an independent point of view.

It is, of course, not necessary that a duty, the violation of which may constitute actionable negligence, should arise out of any contractual relation between the parties. There are other relations and situations or circumstances attending the occurrence or transaction connected with the injury which may give rise to such a duty. The defendant owed to this plaintiff the duty of refraining from subjecting him without warning to danger from a condition which was known to it, or could have been known by the exercise of due care, and "there is a general duty owing to others of not injuring them by any agency set in operation by one's act or omission." 45 C. J., p. 645; *Cashwell v. Bottling Works*, 174 N. C., 324, 93 S. E., 901. The latter case quotes, with approval, *Heaven v. Pender*, 11 L. R. (1882-'83), p. 503: "Whenever one person is by circumstances placed in such a position towards another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of the other, duty arises to use ordinary care and skill to avoid such danger." *Lisle v. Anderson*, 61 Okla., 68, 71, 159 P., 278.

The defendant owed to the plaintiff the duty of exercising reasonable care not to expose him to danger in the invited or permitted use for its benefit of machinery, appliances, or equipment inherently dangerous or which had become dangerous while in its control, if the condition was known to it or could have been known to it by the exercise of due care. *Moreman Gin Co. v. Brown*, 291 S. W., 946, (injury caused by breaking of tackle which plaintiff was invited to use in unloading cotton); *Pennsylvania R. Co. v. Hummel*, 167 Fed., 89 (injury to plaintiff caused by furnishing his employer with defective car to be loaded); *Connor's v. Great Northern El. Co.*, 9 App. Div., 311, 323, 85 N. Y. S., 644 (injury from use of defective appliance when no contractual relation existed); *King v. National Oil Co.*, 81 Mo. Ap., 155 (injury caused plaintiff by dangerous condition of wagon he was repairing); *MacPherson v. Buick Motor Co.*, 217 N. Y., 382, 390, 111 N. E., 1050: "He who puts a thing in charge of another which he knows to be dangerous or to be possessed of characteristics which in the ordinary course of events are likely to produce injury owes a duty to such person to give reasonable warning or notice of such danger." *Kutchera v. Minneapolis etc. Railroad Co.*, 50 N. D., 597, 603, 197 N. W., 140.

The evidence taken in the light most favorable to the plaintiff tends to show that the truck was equipped with dual wheels, the dual wheels being assembled so closely together that the hand could be with difficulty

STROUD *v.* TRANSPORTATION CO.

inserted between them; that the outer wheel was so mounted that the openings in it, referred to in the evidence as openings between the spokes, were not in proper correlation with the inner wheel so that the valve stem used for inflating the tire of that wheel could be easily accessible, which is declared by the witness Jantsch to be an improper mounting; that the truck had been originally equipped with tires or tubes carrying a long valve stem, which would render it unnecessary to insert the hand between the wheels in the process of inflation; that the truck had been driven eighteen or twenty miles with a slack tire on the inner wheel, and although presumably supported by the outer fully inflated tire, the supporting rim or flange of the inner tire may have been disarranged from its proper assemblage by bumping on irregularities in the road, this effect being more easily brought about on account of the increase of weight upon the inflated tire. It further tended to show that the long valve stem with which the truck had been originally equipped had been removed and a short valve stem substituted for it, and that this was less safe; that the defendant itself used a long chuck or nozzle upon the air hose as a safety device in inflating the tires.

The evidence tends to show that McLeod and Henry, in charge of the truck, had undertaken the inflation themselves and accepted the services of plaintiff during the job because his hand was smaller than theirs and could be more readily inserted between the wheels in order to keep the air hose in contact with the short valve stem during inflation.

Plaintiff received his injury from the rim flange of the inner wheel, which "flew loose," pinning his left hand between the wheels and injuring the thumb of his right hand, which hand he had thrust through an opening in the outer wheel to reach the short valve of the inner stem.

While McLeod and Henry disclaimed any knowledge of the danger, and one of them declared that he had never before seen a rim fly off that way, it is not denied that they drove the truck with a slack tire for eighteen or twenty miles, and under the circumstances of this case it is a question for the jury as to whether or not this may have involved the creation of a dangerous situation which was known to defendant's agents, or ought to have been known by the exercise of due care, and of which it was their duty to inform the plaintiff.

The judgment of nonsuit is

Reversed.

WINBORNE, J., dissenting. As I understand the majority opinion in this case, the decision is not made to rest upon any contractual relationship between the plaintiff and the defendant, but upon a general duty of defendant to warn plaintiff of a danger known to it or of which it should have known in the exercise of ordinary care, and which was unknown

to plaintiff or was undiscoverable by him in the exercise of ordinary care under the particular circumstances. I am unable to agree that the facts revealed by the evidence in this case, taken in the light most favorable to the plaintiff, bring the case within such rule. I think judgment as of nonsuit should be sustained.

In the first place, the evidence discloses that the plaintiff James Stroud was employed by the Bowman Oil Company at its filling station, where free service of air and water was tendered to motor vehicles stopping there, and that in his employment plaintiff was charged with the duty of rendering this service to any who might apply therefor. In the performance of that duty he was acting as the agent of the Bowman Oil Company, and using for the purpose appliances furnished by his employer, and he was in no sense the agent or servant of the person or party applying for the service.

"An automobile driver stopping at a filling station for gasoline has a right to act upon the assumption that the proprietor will provide proper and safe appliances with which to work, and careful servants." Headnote in the case *Fredericks v. Atlantic Refining Company*, 282 Pa., 8, 127 R. C. L., 615, 38 A. L. R., 666. This is said with reference to liability of the proprietor of the filling station to the automobile driver.

Stated conversely, an automobile driver stopping at a filling station to be served with free air there offered has a right to act upon the assumption that the proprietor will provide proper and safe appliances with which his employees are to work, and competent and careful servants to do the work, and is not liable for failure to provide either.

In the second place, the evidence for plaintiff shows that his injury was caused by a rim flange on the inner dual tire "jumping off," while he, in the line of his duty, was in the act of performing the free service given by the Bowman Oil Company. Plaintiff testified, "I guess the thing that caused my injury was the rim coming off." The evidence is silent as to what caused the flange rim to jump off. There is speculation that the inner tire being partially deflated while the truck was being driven along the highway may have permitted the flange to become loosened. However, the evidence is that the outside dual tire was inflated, and that the inner tire did not touch the pavement, but that it could have "hit a swell place across the road and worked off." Yet there is no evidence that it did hit such a place.

There is no evidence that John L. McLeod and Lacy Henry, employees of defendant, who had control of the truck at the time, knew that the rim flange was loose, or that in the exercise of ordinary care they should have known it. They, testifying for plaintiff, said that they had "never heard of those rim flanges jumping off before." Nor is there evidence that a rim flange had ever jumped off such a tire. All

that the evidence shows they knew about it is that the inner tube had been partially deflated while the truck traveled 18 or 20 miles. The plaintiff also knew that the tire was partially deflated and that the truck had been traveling while it was deflated. He testified that the tire carried ninety pounds of pressure and that after he had put some air in the tire there was only approximately twenty pounds in it when he was hurt. He knew that the truck had been traveling and had just driven up to the filling station. This evidence shows that he had as much information from which to know of the danger as did the operatives of the truck. Both he and they all swear that they did not think any danger existed. Speaking of putting hand between the tires, John L. McLeod testified: "Never thought about it being dangerous." Lacy Henry said: "I put one hand in through the two tires, the same way James Stroud did, and Mr. McLeod tried it the same way. . . . If I hadn't thought it was safe I wouldn't have put mine in there and wouldn't have let him . . . I didn't think it was dangerous." Plaintiff testified: "I didn't think it was anything dangerous about what I was doing." This evidence of plaintiff negatives any contention of a danger known to defendant and unknown to plaintiff.

If it be that the truck was originally equipped with a long stemmed valve and that a short one was substituted, the evidence fails to show that this was the real, the efficient, the proximate cause of the injury. Admittedly the rim flange "jumping off" was the cause of the injury to plaintiff.

"Foreseeable injury is requisite of proximate cause, and proximate cause is requisite of actionable negligence, and actionable negligence is requisite for recovery for personal injury negligently inflicted." *Osborne v. Ice & Coal Co.,* 207 N. C., 545, 177 S. E., 796.

"An event resulting from an unknown cause, or an unusual or unexpected event from a known cause; chance; casualty," is an accident. *Crutchfield v. R. R.,* 76 N. C., 322; *Martin v. Mfg. Co.,* 128 N. C., 264, 38 S. E., 876; *Simpson v. R. R.,* 154 N. C., 51, 69 S. E., 683; *Fore v. Geary,* 191 N. C., 90, 131 S. E., 387.

In *Martin v. Mfg. Co., supra,* it is said: "Injuries resulting from events taking place without one's foresight or expectation, or an event which proceeds from an unknown cause or is an unusual effect of a known cause, and, therefore, not expected, must be borne by the unfortunate sufferer." Such is this case as I view it.

STACY, C. J., and BARNHILL, J., concur in dissent.