# Richmond

## Robert E. Jones, Jr. v. Ervin J. Bush.

June 12, 1961.

Record No. 5241.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*H. E. Widener, Jr.* (*Robert I. Asbury; Widener & Widener,* on brief), for the plaintiff in error.

*R. Crockett Gwyn, Jr.* and *Roy H. Burke, Jr.,* submitted on brief for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Robert E. Jones, Jr., the operator of a service station, was injured while inflating a tire on a truck owned by Ervin J. Bush when the tire assembly blew apart and struck him. Jones filed an action at law against Bush to recover damages for his injuries which, he alleged, were caused by the negligence of Bush in that the latter failed to warn him of the condition of the tire and its assembly and which he (Bush) knew or ought to have known was unsafe and dangerous. After Bush had filed a general denial of negligence and an allegation that Jones himself was guilty of contributory negligence, there was a trial before a jury. At the conclusion of the plaintiff's evidence the lower court struck such evidence on the grounds that there was no showing that the defendant, Bush, was guilty of any negligence which was the proximate cause of the plaintiff's injuries, and that even if such negligence had been shown, the plaintiff was guilty of contributory negligence. A verdict and judgment for the defendant necessarily followed. The plaintiff has appealed claiming that under the evidence adduced the negligence of the defendant and the contributory negligence of the plaintiff were for the jury. The parties will be referred to as they appeared in the lower court.

The evidence is without dispute. Jones, the plaintiff, owns and operates a service station in the town of Marion, Virginia, and had been in that business for two and one-half years before the accident. On October 7, 1957, the defendant, Bush, brought to the service station a Ford truck which he had recently acquired and after purchasing gas and oil, requested that Jones "gauge his tires" to 90 pounds. Jones inflated the right front tire without mishap, but upon placing the air nozzle on the outside right rear dual tire the rim assembly blew apart, "just in a flash," as Jones testified, striking and severely injuring him.

The witnesses agreed that the tire rim and wheel assembly were new, in apparently good order, and without any visible defect. The rim and assembly were described as "a drop center wheel, interlock."

The assembly has no mechanical device for locking it and depends entirely upon air pressure within the tire to hold it in place. Ordinarily it can be unlocked and disassembled only after the pressure in the tire has been released. The record is silent as to the amount of pressure which is required to maintain a safe locking of the assembly or at what pressure the assembly will come apart. At the time of the accident the pressure in the tire was supposed to have been at 30 pounds, with which the truck had been operated for the preceding week or more.

Bush acquired the truck "the last of September" 1957 in Columbus, Ohio, from which point it was driven to Marion, Virginia, a distance of about 300 miles. Since the truck carried no load on this trip the pressure in the rear tires was reduced to 30 pounds in order to prevent the vehicle from "bouncing around" on the road. After reaching Marion the truck was operated with the reduced air pressure without mishap for "a week or more" preceding the day of the accident. Following the accident the tire rim was reassembled, the truck was put back in use and operated without mishap.

The gist of the plaintiff's case is that the defendant knew or ought to have known that the deflated tire made the rim assembly dangerous and unsafe and that he was negligent in not warning the plaintiff of this situation.

The plaintiff relies upon the well-settled principle that when one person puts a thing in charge of another which he knows, or in the exercise of ordinary care should have known, to be dangerous or to possess characteristics which, in the ordinary course of events, are likely to produce injury, he owes a duty to such person to give reasonable warning or notice of such danger. *Stroud* v. *Southern Oil Transp. Co.*, 215 N. C. 726, 3 S. E. 2d 297, 299, 122 A. L. R. 1018. This principle has been applied in cases such as that with which we are here concerned. Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 7A, § 5011, p. 534; 61 C. J. S., Motor Vehicles, § 741, p. 887; *Stroud* v. *Southern Oil Transp. Co.*, *supra*.

In order to bring himself within the stated principle, the burden was on the plaintiff, Jones, to show that at the time the defendant, Bush, delivered the car to the plaintiff he, the defendant, knew, or by the exercise of ordinary care should have known, that the tire assembly was dangerous and unsafe. While the evidence shows that the defendant knew that the pressure in the tire had been reduced, there is no showing that he knew or should have known that this rendered

the rim assembly dangerous and unsafe. As has been said, the truck had been driven safely in this condition from Columbus, Ohio, to Marion, Virginia, a distance of about 300 miles, and thereafter around Marion for several days. There is no evidence that during this time anything occurred to indicate that because of the reduced pressure the tire assembly was unsafe or unfit for use. There is no showing that the reduced pressure of 30 pounds was insufficient to secure the tire assembly safely in place. Nor is there any showing at what pressure the tire assembly would unlock or come apart. Hal Harkrader, who testified as an expert witness for the plaintiff, admitted his lack of knowledge as to these matters.

The plaintiff relies upon two statements made by the defendant, Bush, as showing that he knew before the accident that the tire assembly was unsafe. Howard Malloyed, an attendant at the service station, testified that shortly after the accident Bush stated that he had let the air out of the tire. Whereupon Malloyed asked him: "With the air let out and running the tire low, won't that let that lock rim work in there?" to which Bush, the defendant, replied: "It would."

Again, the plaintiff testified that when the defendant visited him in the hospital shortly after the accident and they were discussing the cause, they "had agreed" that the reduced pressure was "probably the cause of the wheel becoming unlocked and blowing out when we put the tire pressure back in it."

These statements, the plaintiff says, show that the defendant "actually knew" that the reduced pressure rendered the tire assembly unsafe. We do not agree with this contention. While these statements may be taken as an admission that the defendant had concluded or knew *after the accident* that the reduced pressure caused the tire assembly to become unlocked, they do not show that *before the accident* he knew or should have known that this would occur. The fact that he had operated the truck in this condition without mishap for a considerable time and distance negatives such knowledge.

The plaintiff cites *Stroud* v. *Southern Oil Transp. Co., supra,* 215 N. C. 726, 3 S. E. 2d 297, 122 A. L. R. 1018, as supporting his position. There it was held by a divided court that a service station attendant injured while inflating a truck tire was entitled to recover damages of the owner of the vehicle. The majority of the court held that the sufficiency of the evidence to sustain the negligence of the defendant truck owner in failing to warn the attendant of the de-

fective condition of the tire was for the jury. But the facts there are quite unlike those in the case before us. There the tire on one of the inner dual wheels had been partially deflated and the truck had been driven in this condition for about 20 miles just before reaching the service station. The opinion indicated that the supporting tire rim may have been damaged during this operation. Moreover, it was shown that the tires were improperly equipped with short valve stems which made it necessary for the attendant in applying the pressure hose to expose his hand in a dangerous manner by reaching between the spokes of the dual wheels. Under all of these circumstances, the court held that it was for the jury to say whether or not this created a dangerous situation which was known or ought to have been known to the defendant and of which he should have informed the plaintiff.

In the case before us there is no evidence that the rim assembly was damaged by the operation of the truck at the reduced air pressure. Indeed, the evidence is to the contrary. As has been said, after the accident the tire assembly was restored and the wheel operated without mishap. Nor is there any evidence that the tire assembly was defective.

■ We agree with the lower court that the plaintiff's evidence fails to show that the defendant was guilty of any negligence which was the proximate cause of the accident and of the plaintiff's injuries. To sustain the contention of the plaintiff here would be tantamount to saying that the owner of a motor vehicle who delivers it to an operator of a service station, or a repairman, may be held liable for a hidden defect in the mechanism which renders it unsafe and of which the owner has no knowledge. To avoid such liability the owner would be required before delivering the vehicle to make, or cause to be made, an expert examination to discover any such hidden defect. The authorities agree that the owner is under no such duty. As is said in Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 7A, § 5011, p. 534, "[W]hile the owner of an automobile, delivering it to a repairman for repairs, owes to him the duty to disclose to him any defect in the mechanism which may render it unsafe or dangerous of which such owner has knowledge, such owner does not owe to him the duty to employ the skill of an expert mechanician to make an examination to discover such defect before delivering the automobile for repairs." See also, 61 C. J. S., Motor Vehicles, § 741, p. 887; *Varas* v. *James Stewart & Co.*, 223 Mo. App. 385, 17 S. W. 2d 651.

■ We also agree with the lower court that the principle of *res ipsa loquitur* is not applicable here. That doctrine presupposes that the instrumentality was under the exclusive control of the defendant. *City of Richmond* v. *Hood Rubber Products Co.*, 168 Va. 11, 16, 190 S. E. 95, 97, and cases there cited. In the present case the instrumentality was under the control of the plaintiff and the accident occurred while he was attempting to inflate the tire.

Having reached the conclusion that there was no showing of negligence on the part of the defendant, we need not consider whether the plaintiff was guilty of contributory negligence.

The judgment is

*Affirmed.*