LIBERSKI, Appellant, v. JONAS and another, Respondents.

*October 29—November 27, 1962.*

For the appellant there was a brief by *Henry A. Tessmer,* attorney, and *Stephen R. Miller* of counsel, both of Milwaukee, and oral argument by *Mr. Miller.*

For the respondents there was a brief by *Kivett & Kasdorf,* attorneys, and *Clifford C. Kasdorf* of counsel, all of Milwaukee, and oral argument by *Clifford C. Kasdorf.*

DIETERICH, J.  On August 5, 1958, at about 8 p. m., defendant Jonas had driven his Volkswagen to plaintiff Liberski's service station. After receiving gasoline defendant parked his car in front of the car-washing bay of the station.

At this point the testimony conflicts. Liberski's story is that Jonas asked if he could try a sealed-beam unit in the

Volkswagen as one of his lights was dim. Jonas contends that he asked Liberski to fix his headlight, but Liberski said he was busy and suggested that Jonas try to repair the headlight himself.

It is undisputed that Jonas then installed one of Liberski's new sealed-beam units and found that it also appeared dim. Jonas therefore removed the new unit and replaced the old unit.

At this point the testimony differs once again. Jonas testified in substance that he replaced the old sealed-beam unit in the headlight assembly, then fastened the assembly into the fender. He then told Liberski that the new unit worked no better than the old one. Liberski removed the headlight assembly from the fender and attempted, with a screwdriver, to remove springs which held the sealed-beam unit in the headlight assembly. While thus attempting to remove these springs, one popped up and out of the headlight assembly and struck Liberski in the eye.

Liberski tells a different story. After pumping gas, he went into the service station and Jonas approached him with two springs in his hand stating that he could not remove the third retaining spring. Liberski went to the Volkswagen with Jonas where he saw the headlight assembly hanging from the left front fender and resting on the bumper and bumper guard. Jonas grabbed the spring and attempted to remove it, but could not do so. When Jonas stepped back, Liberski leaned over to see the spring and headlight assembly and the spring popped up and out and hit him in the eye.

The relevant portions of the special verdict and the answers of the jury thereto are, to wit:

"Question 1: Just before the plaintiff, Julian Liberski, was injured, on August 5, 1958, did the defendant, William Jonas,

"(a) in substance, fail to tell the plaintiff that the sealed-beam head lamp assembly springs could pop out if not manipulated properly? Answer: Yes.

"(b) manipulate one of the sealed-beam head lamp assembly springs so that it let loose and hit the plaintiff in his left eye? Answer: No.

"Question 2: If you answer any subdivision of question 1 'Yes,' then answer the corresponding subdivision of this question: Was the defendant, William Jonas, negligent with respect to,

"(a) not telling, as so found by such answer, the plaintiff that the sealed-beam head lamp assembly springs could pop out if not manipulated properly? Answer: No.

"Question 4: Just before the plaintiff, Julian Liberski, was injured, did said plaintiff manipulate one of the sealed-beam head lamp assembly springs so that the spring let loose and hit him in the left eye? Answer: No."

Questions 1 (b) and 4, both use this language, "manipulate one of the sealed-beam head lamp assembly springs *so that* it let loose and hit the plaintiff in his left eye." (Emphasis supplied.) The words *"so that"* create a cause-and-effect relationship in the question. Hence the jury by answering Questions 1 (b) and 4, "No," did not find that neither defendant nor plaintiff manipulated the headlight assembly spring before the accident, but only that neither defendant nor plaintiff handled the spring *so that* it would let loose and pop into the air. The jury found that neither acts by the defendant nor by the plaintiff were causal with respect to the release of the spring—that such release was, in the words of the trial court, "an unavoidable accident." That conclusion is supported by the evidence.

The plaintiff, in his argument, assumes that the evidence necessary to support the verdict must be direct, positive, and consistent with either the defendants' or the plaintiff's version of what occurred. This assumption is erroneous. The testimony in this action was conflicting. The inferences to be drawn are for the jury and it was for the jury to de-

termine where the truth lies. *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 31 N. W. (2d) 156, and *Hoffman v. Buggs* (1959), 6 Wis. (2d) 488, 95 N. W. (2d) 237.

The plaintiff also contends that the defendant had a duty to warn the plaintiff about the dangerous condition of the headlight assembly, *i.e.,* the possibility that the spring would pop out. It is not contended that the headlight assembly was in any way defective.

By Questions 1 (a) and 2, the jury found that the defendant did fail to inform plaintiff that the spring would pop out and that such failure to warn did not constitute an act of negligence.

The jury was probably impressed by the fact that one witness, John Fisco, an automobile body repairman, disassembled and reassembled the Volkswagen headlight assembly in the presence of the jury. He did so without tools and apparently without difficulty.

In substance, plaintiff contends that a service-station operator competent to place a head lamp in an American car would not know how to perform the same operation in a Volkswagen. Hence, plaintiff concludes there is a duty on a Volkswagen owner to warn the service-station operator of the idiosyncrasies of the Volkswagen headlight assembly. This court takes judicial knowledge that Volkswagens are not rare automobiles.

The plaintiff, in the ordinary course of his business as a service-station operator, is expected to possess the skill and knowledge necessary to perform minor repairs. Likewise, he is presumed to have knowledge of potentially hazardous conditions while making such repairs.

There being credible evidence to support the verdict of the jury, the judgment is affirmed. *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83.

*By the Court.*—Judgment affirmed.