273 So.2d 196

**W. T. CLOUD, Ind. etc.**

v.

**Walter Vernon MOON.**

**SC 52.**

Supreme Court of Alabama.

Feb. 1, 1973.

See also 287 Ala. 112, 248 So.2d 708.

34

Inzer, Suttle, Inzer & Pruett, Gadsden, for appellant.

Burns, Carr & Shumaker, Gadsden, for appellee.

MERRILL, Justice.

This is an appeal from a judgment for the plaintiff-appellee in the amount of $20,785.00 against the defendant-appellant on a two-count complaint. A motion for a new trial was overruled.

The facts are essentially without dispute. At the time of the fire, appellee was a self-employed automobile mechanic with nearly twenty years experience. His shop was adjacent to his residence and was in a tin building with a floor of part concrete and part dirt. The only wood in the building was the lathing to hold the tin. Appellee's specialty was working on large trucks. He had previously worked for appellant and some months earlier had overhauled the motor on the truck that burned. Appellant was in the timber and pulpwood business and used large trucks to transport pulpwood from the forest to a paper mill.

Appellant contracted with appellee for appellee to overhaul the engine in one of appellant's trucks, a red International R-190. The truck was eleven years old and had been purchased second hand by appellant about a year before it burned. On the morning of March 14, 1969, appellee and his father took possession of the truck at appellant's place of business in Attalla. Appellee's father drove the truck to his son's garage about fifteen miles away, and appellee then took off the hood and fenders and removed the engine. In the process of removing the engine, appellee disconnected the battery cable at the starter

relay rather than at the battery post, taped the cable end and disconnected the fuel line from the fuel pump. The following morning, March 15, the engine was taken to Gadsden to have some machine shop work done on it and the engineless truck was left in the garage. Appellee testified that between 9:00 and 10:00 on the evening of March 15, he heard an explosion and discovered his garage on fire. The truck was destroyed by the fire as were several items of tools and equipment belonging to appellee.

Assignments of error 26–38 charge error in that the court permitted appellee to cross-examine his own witness, to impeach him as to alleged contradictory unsworn statements, and assignments 39 and 40 charge error in the admission of an alleged statement of the witness into evidence over strenuous objections.

The appellee had taken the deposition of the witness, Gordon Martin, on December 2, 1969, and later introduced it on the first trial of this case which began on September 30, 1970. The deposition was taken before the court reporter under Act No. 375, Acts of Alabama 1955, p. 901, listed in the 1958 Recompilation as Tit. 7, § 474(1) et seq. Appellee's counsel, Mr. Carr, was present as were Messrs. Suttle and Pruett, representing appellant. In that deposition, Martin testified that an International truck which he was driving caught on fire as a result of having been "cross-wired," but the same type International truck which burned in appellee's garage was not the same truck which had previously caught fire; that he had done repairs on both trucks and that the only electrical work that had been done on the truck that burned in Moon's garage was repairing a starter solenoid that had burned out and repairing the "flashing lights."

Prior to the taking of the deposition, Mr. Carr, of counsel for appellee, had taken a statement signed by the witness Martin in counsel's office on April 1, 1969, some two weeks after the fire at appellee's

garage and long before the taking of the deposition.

On the second trial, which is the subject of this appeal, appellee called Martin as his witness and notified the court that he wished to cross-examine Martin as a witness. Many objections were overruled and finally the trial court allowed appellee's counsel to cross-examine his own witness. The record shows.

"MR. BURNS: We want to call him as a hostile witness. Very hostile. And we want the right to crosss examine him too"

And after some discussion:

"THE COURT: No, they might not claim surprise, but they do claim hostility if this man testifies that that is his signature and that is his statement, on the ground that he is a hostile witness, I'm going to let them cross examine him."

The trial court may, in its sound discretion, allow a party to ask leading questions when the witness, called by that party, is hostile to the party's cause. Louisville & N. R. Co. v. Grizzard, 238 Ala. 49, 189 So. 203, cert. denied 308 U.S. 603, 60 S.Ct. 140, 84 L.Ed. 504; Winchester v. State, 20 Ala.App. 243, 102 So. 535; Tit. 7, § 444, Code 1940. But we have not been cited to any case which permits a party to call a witness and immediately cross-examine him on the theory that he is a hostile witness.

There must be an avowed surprise before one's own witness may be subjected to cross-examination by the party calling him. Campbell v. Davis, 274 Ala. 555, 150 So.2d 187; Alabama Power Co. v. Hall, 212 Ala. 638, 103 So. 867. Here, appellee could not have been surprised. The witness had been offered by the appellee at the first trial. A member of the firm employed by appellee participated in the taking of the deposition at that time, appellee's counsel had a written statement

signed by the witness which had been signed in the presence of appellee and Mr. Burns, the senior member of the firm representing appellee.

■ In his deposition, the witness testified that the International truck which he drove and which had caught fire because it was "cross-wired," was not the· truck which burned at appellee's garage. The witness was not examined at that time as to the statement which counsel had previously secured from the witness. Under these conditions, there could not have been surprise to appellee or his counsel as to what the witness had previously sworn. They could reasonably take the position that he was hostile, but not that his hostility was a surprise. They did not claim surprise.

In Louisville & N. R. Co. v. Scott, 232 Ala. 284, 167 So. 572, this court said:

"* * * A party has no right to impeach his own witness, nor to show contradictory statements by her. He may, when taken by surprise, prove by her that before using her as a witness she had made a different statement to him. This is merely to refresh her testimony or justify him in putting her up as his witness to that fact. Gandy v. State, supra [81 Ala. 68, 1 So. 35]; White v. State, 87 Ala. 24, 5 So. 829; Griffith v. State, 90 Ala. 583, 8 So. 812; Thomas v. State, 117 Ala. 178, 23 So. 665; Alabama Power Co. v. Hall, 212 Ala. 638, 103 So. 867; Peterson v. State, 227 Ala. 361, 369, 150 So. 156; Greenleaf on Evidence, § 444.

"No such situation here exists. The effort shown on her cross-examination made by plaintiff was to impeach her as a witness for defendant, and has no place in her testimony when it is offered by plaintiff on the subsequent trial of the same suit, after her death. Such cross-examination made by plaintiff, legal when she was the defendant's witness, was illegal when she became plaintiff's witness. Gandy v. State, supra; Barker v. Bell, supra [46 Ala. 216]."

On the same point, in Foremost Dairies, Inc. v. Cutler, Fla.App., 212 So.2d 37, it was said:

"* * * A party will not be permitted to put a witness on the stand knowing that his testimony will be adverse and then claim surprise in order to impeach such witness. This is particularly true when the procedure is nothing more than a device or artifice to get into evidence before the jury that which would otherwise be inadmissible."

■ Finally, whether or not the testimony of the witness Martin was admissible, it could not be the basis of establishing liability of the defendant. McElroy, Law of Evidence in Alabama, 2nd Ed., Vol. 1, states in § 159.02(1):

"A self-contradictory statement by a witness who is not a party, whether testified to by him on cross-examination or proven by others is not substantive evidence of the matter asserted, that is, such statement operates only to discredit the witness, and has no other effect; in particular, such statement cannot be the basis of a finding of a fact necessary to the establishment of liability or defense. Hamilton v. Browning, 257 Ala. 72, 57 ·So.2d 530; Ferlise [Ferlesie] v. Cook, 201 Ala. 571, 78 So. 915; Thomas Furnance Co. v. Carroll, 204 Ala. 263, 85 So. 455; Lynn v. State, 37 Ala.;App. 400, 69 So.2d 485, syl. 4; Lawson v. State, 36 Ala.App. 438, 57 So.2d 643, syl. 4; Anno: 133 A.L.R. 1455."

Another statement of this principle is found in 58 Am.Jur., Witnesses, § 799, p. 445:

"However it is never permitted to make of this rule allowing a party to impeach his own witness an artifice by which inadmissible matter may be gotten to the jury through the device of offering a witness whose testimony is known

to be adverse, in order, under the name of impeachment, to get before the jury for its weighing favorable ex parte statements the witness has made. The rule is founded not only on the fact that the witness has given testimony at variance with what the party producing him as a witness had good reason to believe, before calling him to the witness stand and examining him, that it would be, but also that such testimony is prejudicial or detrimental to the case of such party. Even where there is a real surprise it is not proper to permit the impeaching testimony to go beyond the only purpose for which it is admissible—the removal of the damage the surprise has caused."

In Lewis v. State, 44 Ala.App. 319, 208 So.2d 228, it was said:

"The testimony of a witness may be impeached by presenting proof showing that he has made statements inconsistent with or contradictory of his testimony. 'Evidence of such contradictory statements is admitted only to discredit the witness; it is not affirmative evidence of the facts stated.' Jones on Evidence, Fifth Edition, Vol. 4, Section 932, p. 175. See also Phillips v. State, 248 Ala. 510, 28 So.2d 542; Evans v. State, 39 Ala. App. 498, 105 So.2d 831."

In Eisenberg v. United States, (5th Cir.), 273 F.2d 127, it was said:

"The orthodox view is that when a witness takes the offering side by surprise and alters his story, a prior inconsistent statement is admissible for impeachment purposes but not as substantive evidence of the facts stated. '[T]he contradictory statements can have no legal tendency to establish the truth of the subject-matter.' (Citations omitted) And, 'if the only evidence of some essential fact is such a previous statement, the party's case falls'. McCormick, Handbook of the Law of Evidence 73 (1954)."
Also in Eisenberg, supra, the following appears: "'[The document used to refresh recollection] does not itself go before the jury, unless the other side puts it in.' Portman v. American Home Products Corp., 2 Cir., 1953, 201 F.2d 847, 850.

"In no case do we find that a statement used by a party to refresh the recollection of his witness is admissible by that party. * * * *"

It follows that the trial court erred in permitting the plaintiff to cross-examine his own witness, and also in admitting the written statement of the witness into evidence.

Count A alleged that appellee was engaged in the business of making mechanical repairs on trucks and that appellant contracted with him to make certain repairs on the engine of one of his trucks; that at the time appellant delivered possession of the truck to appellee, appellant knew that the truck was in a dangerous condition, likely to burn or explode at any time, and that he negligently delivered possession to appellee without warning him of its dangerous condition; and that on March 15, 1969, the truck caught fire and exploded and destroyed appellee's garage, equipment, tools, etc. Count B is substantially the same as Count A. The pleas were in short by consent.

The issues formed by the pleadings imposed upon appellee the burden of proving, (1) that the truck was in such a dangerous condition when it was turned over to appellee that it was likely to burn or explode; (2) that the dangerous condition was known to appellant and unknown to appellee when the truck was delivered to appellee; (3) that appellant negligently failed to warn appellee of this known dangerous condition; and (4) that the damages claimed proximately resulted from the failure of appellant to warn appellee of the known dangerous condition.

This case is one of first impression in this court. It differs from Penton v. Favors, 262 Ala. 262, 78 So.2d 278, in that

there the bailor loaned bailee an automobile to use temporarily, while here the bailor, a non-expert owner, put the truck in the hands of an expert bailee for the overhaul of the truck engine.

The rule in cases like the one before us has been established in many jurisdictions. In 14 Blashfield Automobile Law and Practice, 476.41, p. 460, we read:

"The bailment of an automobile, to a skilled and experienced repairman, to be repaired, is very different from the bailment of a vehicle for hire, for use by the bailee. While the owner of an automobile, delivering it to a repairman for repairs, owes to him the duty to disclose to him any defect in the mechanism which may render it unsafe or dangerous of which such owner has knowledge, such owner does not owe to him the duty to employ the skill of an expert mechanician to make an examination to discover such defect before delivering the automobile for repairs."

Blashfield cites Rice v. Allen, Mo., 309 S. W.2d 629; Stroud v. Southern Oil Transp. Co., 215 N.C. 726, 3 S.E.2d 297; Brown v. Hudson, 50 Tenn.App. 658, 363 S.W.2d 505; Cornett v. Hardy, Tex.Civ.App., 241 S.W.2d 186; Liberski v. Jonas, 18 Wis.2d 127, 118 N.W.2d 192; Anderson v. London Guarantee & Acc. Co., La.App., 36 So.2d 741; Knowles v. Jenney, 157 Me. 392, 173 A.2d 347; Varas v. James Stewart & Co., 223 Mo.App. 385, 17 S.W.2d 651. See also 61A C.J.S. Motor Vehicles § 741, p. 689, citing Jones v. Bush, 202 Va. 752, 120 S. E.2d 382.

In Varas v. James Stewart & Co., 223 Mo.App. 385, 17 S.W.2d 651, the court said:

"These cases, relating to bailments for hire, furnish a well-nigh perfect antithesis to the case at bar. It is easy to see why a livery stable keeper, engaged in the business of hiring instrumentalities for the use of the persons to whom they are hired, impliedly warrants the suitability of such instrumentalities for the purposes for which they are hired, and their freedom from defects which may endanger the bailee in their use, so far as such defects may be discoverable by the exercise of due care. One engaged in such business owes to his patrons the duty of reasonable inspection. This duty arises out of the very nature of his undertaking. But is the owner of an automobile, consisting of complicated and intricate machinery, concerning the construction of which he has no expert knowledge, who delivers it to a skilled machinist for repairs, to be placed in the same class with persons engaged in the business of hiring vehicles or other instrumentalities to their patrons to be used by them for transportation purposes? We are unwilling to so rule. * * *"

Assignments of error 3 through 11 charge that the court erred in refusing to give the affirmative charge, with or without hypothesis as to both counts and as to each count separately.

We start with the rule that in civil cases, the question must go to the jury if the evidence furnishes a scintilla in support of the theory; and in considering the propriety of the affirmative charge, we review the tendencies of the evidence most favorable to the plaintiff, regardless of any view we may have as to the weight of the evidence; and we must allow such reasonable inferences as the jury were free to draw, not inferences which we think the more probable. Orange v. Shannon, 284 Ala. 202, 224 So.2d 236; Alabama Power Co. v. Guy, 281 Ala. 583, 206 So.2d 594. So we look for evidence in the record to support the four allegations which we have stated the appellee must prove in order to be successful.

Appellee states in brief:

"* * * We insist that there was ample evidence before the jury that the appellant knew of the defective condition of the truck; he admitted that he knew

the solenoid switch had shorted out, that the battery had shorted out, that the flasher lights had shorted out and the wires smoked up, although he later denied knowledge of the flashers, and that he had had labor trouble and one of his trucks had been sabotaged. He further stated that he did not inform appellee of these troubles before giving him the truck. * * *."

The undisputed evidence was that the solenoid switch was removed when the appellee removed the engine from the truck; that the driver who had driven the truck six days a week for six or seven months just preceding the fire had never had any trouble with the starter, the lights or the battery during that time; that the only trouble was that the engine began using oil and he recommended that the engine be overhauled. The appellee testified that he had once repaired a battery cable on the truck by taping it up; that when he removed the engine the day of the fire he disconnected the fuel line and left it hanging without taping or plugging it; and that he started to disconnect the cables from the battery posts but did not because two battery posts were loose. Whether or not appellant had had any labor problems is not relevant in this case. The only duty owed by appellant was to warn of any known dangerous condition pertaining to the truck. Labor problems are not mechanical components of the truck.

Thus, it appears from the undisputed evidence that for the five months next preceding the fire, the truck was not in a dangerous condition and that no dangerous condition was known to the appellant for him to report to appellee.

Two other matters require mention. One was that there was evidence that one of the caps on one of the gasoline tanks had a wooden plug wrapped with a rag in the vent in the cap. This may or may not have been safe, but if the expert appellee knew of the condition before he took possession of the truck, there was no duty to tell him of the rag-wrapped wooden peg. The record shows the following questions and answers while appellee was testifying:

"Q Well now, you—you noticed that wooden plug and that rag in that cap, over in Attalla, didn't you?

"A Yes, sir.

"Q You noticed it in that truck before you ever drove the truck or left from—drove the truck away from over there?

"A Yes, sir."

The other matter is that appellee's expert testified that in his opinion the cause of the fire was "either the battery or the battery cable." There was no evidence that the electrical system was dangerous or unsafe after the last repairs had been made on the truck.

In McClinton v. McClinton, 258 Ala. 542, 63 So.2d 594, damages were sought for the destruction by fire of a garage apartment building which it is alleged originated in an automobile parked in the garage portion of the building. There was considerable evidence in that case that the ignition system and the electrical wiring in the car had given trouble. The lights had gone out from time to time and the dimmer switch did not work at times. The evidence was undisputed that all the defects had been repaired about a week before the fire.

There, the repairs had been made about a week before the fire; here, they had been made more than five months before the fire. The court held that the defendant was entitled to the "general affirmative charge" and quoted the following from earlier cases:

" ' "Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause."

'But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.' "

In Viking Motor Lodge, Inc. v. American Tobacco Co., 286 Ala. 112, 237 So.2d 632, it was said:

"Courts are reluctant in drawing inferences of negligence as to the origin of fires for the reason that fires occur where due care has been exercised, as well as where due care is wanting. * * * "

■ We hold that appellant was entitled to the affirmative charge without hypothesis because the complaint was not supported by any legal evidence that the truck was in such a dangerous condition that it was likely to burn or explode when turned over to appellee; and that appellant knew of any dangerous condition; and that appellant negligently failed to warn appellee of a known dangerous condition, or that the damages claimed by appellee proximately resulted from the failure of the appellant to warn appellee of the known dangerous condition of the truck.

For the errors noted, the judgment is reversed and the cause is remanded.

Reversed and remanded.

HEFLIN, C. J., and HARWOOD, MADDOX and McCALL, JJ., concur.