Charles Edwin Futral, Jr. was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." The appellant was sentenced to 30 years' imprisonment in the state penitentiary. The appellant was ordered to pay $100 to the Victims Compensation Fund and to pay restitution in the amount of $7,600.38.
On December 1, 1988, Austin Chandler, manager of the American Legion Post 18 in Opelika, Alabama, in closing the club for the evening, took approximately $250 or $300 out of the cash register and placed it in a bank bag. Chandler, Joel Hand, Jimmy Blackmon, and Ms. Cowart (the appellant's mother) left the club at the same time. Chandler testified that he was hit in the face when he approached his car. He recalls that someone kept pulling on the *Page 992 
bank bag, so he dropped it. Hand testified that two persons participated in the assault on Chandler. One man was holding Chandler, and the other man was beating him. Blackmon was also assaulted.
Linda Michelle Lovette testified that she had a conversation with Eddie Nichols concerning the robbery at the American Legion. Lovette taped the conversation. In this conversation, Nichols admitted his involvement in the American Legion robbery. He stated that the appellant's mother had arranged for them to rob a man at the American Legion.
Nichols relayed to Lovette that the appellant drove him to the American Legion. Nichols got out of the automobile and hid in the bushes with a stick. He hit the three men as they walked outside. Nichols was arrested the day after his conversation with Lovette.
On January 9, 1989, Lovette had a conversation with the appellant concerning the statements Nichols made in the tape. The appellant confirmed that Nichols beat the man at the American Legion on the day in question.
Lovette testified that she recalled giving a statement to police in January in which she stated that the appellant told her that he watched Nichols beat the man at the American Legion. At trial, Lovette had no independent recollection of the appellant's making that statement to her. Lovette's statement was not admitted into evidence.
Scott McCormick, an inmate at the Lee County jail, testified for the defense. He and Nichols had visitation on the same day. McCormick attempted to testify as to a conversation he overheard between Nichols and two of Nichols's visitors at the jail. The trial court denied the admission of this evidence on hearsay grounds.
 I
The appellant contends that the trial court committed reversible error by refusing to allow McCormick to testify about a conversation which he overheard between Nichols and two of his visitors at the Lee County jail. The appellant now asserts, as he did at trial, that the evidence was to be used to impeach a prior witness's testimony. The trial court sustained the State's objection to McCormick's testimony and excluded the evidence as hearsay.
The merits of this issue will not be discussed because the issue was not properly preserved for appellate review. If the trial court sustains an objection made to a question which does not on it face show what is the expected answer, it then becomes the duty of the questioning party, in order to predicate his appeal upon this as an erroneous ruling, to make an offer of proof. McElroy's Alabama Evidence, § 425.01(4) (1977).
 " 'An offer of proof must be certain, intelligible, and must definitely state the facts sought to be proved, either by reference to the evidence proposed to be offered or to the facts to be proved. . . . The offer cannot be made in general terms, but must be so made as to give the court an opportunity to rule on the specific testimony, complaint of the exclusion of which is made, and must be so specific as to show the error of the court in refusing to admit it.' " Redwine v. State, 258 Ala. 196, 61 So.2d 724, 727 (Ala. 1952).
In the present case, defense counsel's mere statement that the evidence was to be used for impeachment of a prior witness was not a sufficient offer of proof. Defense counsel failed to state what witness was to be impeached and the basis of the impeachment. Thus, there is nothing before this court to review. See Freeman v. State, 453 So.2d 776
(Ala.Cr.App. 1984); Bracewell v. State, 506 So.2d 354
(Ala.Cr.App. 1986); Gwin v. State, 425 So.2d 500
(Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510 (Ala. 1983).
 II
During the direct examination of Lovette, the prosecutor asked, "did the Defendant tell you whether or not that he watched what Eddie did?" She responded, "I cannot remember, no." The prosecutor attempted to ask Lovette if she remembered making a statement to the police. At *Page 993 
this point, defense counsel objected, stating that the prosecutor was impeaching his own witness. The prosecutor replied that he was not trying to impeach his witness but was surprised by the witness's testimony. The trial court overruled the objection. The prosecutor was then allowed to question the witness concerning the prior inconsistent statement, after a proper predicate was laid. Lovette admitted making a prior statement to police where the appellant admitted he watched Nichols beat the men at the American Legion.
Later, the prosecutor asked Lovette whether she had any independent recollection of whether appellant told her that he watched Nichols beat the men at the American Legion. At this point, defense counsel objected, stating that the question was leading. The trial court sustained the objection. The prosecutor then asked whether the witness had any independent recollection of any statement similar to that. Defense counsel again objected on the basis that the question was leading. The trial court overruled the objection and allowed the witness to answer. The witness stated that she did make a statement to the police in which she said that the appellant told her that he watched Nichols beat the men at the American Legion.
Generally, counsel may not ask leading questions of his own witness on direct examination. However, a party may ask leading questions of its own witness to show surprise at the witness's testimony. See McElroy's Alabama Evidence, § 121.05(7) (1977); Cloud v. Moon, 290 Ala. 33,273 So.2d 196 (Ala. 1973); Campbell v. Davis, 274 Ala. 555, 150 So.2d 187 (Ala. 1962). This exception to the general rule is based on the concept that the proponent is not impeaching his own witness. However, the proponent must avow his surprise, which the prosecutor did in this case.See Gamble, Howard McElroy, The Turncoat orChameleonic Witness: Use of His Prior InconsistentStatement, 34 Ala.L.Rev. 1, 8-9 (1983).
 "[I]f a witness' testimony about a matter is adverse to the party who called the witness, it is proper for the trial court to permit such party, either for the purpose of proving such party's surprise at such testimony or for the purpose of refreshing the recollection of the witness and thereby inducing the witness to change such testimony, to require of the witness whether he had previously made, and to elicit testimony from him that he has previously made, a specified statement about the matter different from his present testimony and of a tenor favorable to such calling party."
McElroy's Alabama Evidence § 165.01(7)(a) (1977);Isbell v. State, 57 Ala. App. 444, 329 So.2d 133,cert. denied, 295 Ala. 407, 329 So.2d 140 (1976).See Walker v. State, 416 So.2d 1083, 1091 (Ala.Cr.App. 1982). Based on the theory of surprise, the State may not only elicit from a witness the fact that he had made a prior inconsistent statement but may also elicit the contents of the statement. Dennard v. State, 405 So.2d 408
(Ala.Cr.App. 1981).
For the reasons shown, the appellant's motion for mistrial was properly denied.
Thus, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
 *Page 1