William Andrew Myers was convicted of rape in the first degree, a violation of § 13A-6-61, Code of Alabama 1975, and was sentenced to 15 years' imprisonment. He presents two issues for review.
 I.
Myers contends that the trial court erred by refusing to allow him to ask the complaining witness questions during cross-examination concerning alleged previous inconsistent statements made by her (1) at a restaurant in the presence of Myers and others, and (2) at Myers's preliminary hearing.
Had the expected testimony been properly revealed, the trial court could have determined whether the expected testimony fell within the following fundamental rule:
 "It is generally agreed that, when a witness is called to testify to a material issue in the case, the party against whom the witness is called may impeach his credibility by proving that he has previously made statements that are inconsistent with his present testimony. These prior statements of self-contradiction can be introduced either through the cross-examination of the witness or . . . by introducing other witnesses who will testify to the inconsistent statement."
Charles W. Gamble, McElroy's Alabama Evidence, § 155.02(1) (4th ed. 1991) (footnotes omitted). However, we agree with the state that this issue is not preserved for appellate review, because Myers failed to make an offer of proof summarizing the testimony expected of the witness had she been permitted to testify. See Futral v. State, 558 So.2d 991, 992 (Ala.Cr.App. 1989); C. Gamble, supra, at § 425.01(4).
 II.
Myers also contends that the trial court erred by "not allowing [a defense witness] to testify as to the complaining witness's reputation in the community for truth and veracity." A review of the record reveals that Myers did not make an offer of proof as to the expected testimony of the witness. However, an examination of the record reveals that the nature of the testimony sought to be elicited was apparent. The record shows the following:
"DIRECT EXAMINATION BY [DEFENSE COUNSEL]:
". . . .
 "Q. . . . I will ask you whether or not you know [T.M.A., the complaining witness]?
"A [by witness David Gorff]. Yes, sir.
 "Q. And I will ask you whether or not you know her general reputation as to truth and veracity.
"THE COURT: Just takes a yes or no answer.
"A. Yes, sir.
"MR. CHANEY [for the state]: Okay, Your Honor.
"Q. . . . Is it good or bad —
"THE COURT: Just a minute.
 "MR. CHANEY: Your Honor, the State would respectfully request —
"THE COURT: Okay. Ladies and gentlemen.
"(Jury not present.)
"VOIR DIRE EXAMINATION BY MR. CHANEY:
 "Q. . . . [Defense counsel] just asked you if you know the — [T.M.A's] reputation for truthfulness and veracity in the county and you answered yes?
"A. Yes, sir.
 "Q. Now are you going to base your testimony on your personal knowledge and association with this witness?
 "A. Just from things that I have heard and my own personal knowledge, yes, sir. *Page 1152 
 "Q. Of the things that you heard from what she has told you and what she has said to you?
"A. Yes, sir. There is —
 "Q. So, you are going to testify . . . based on what you know personally about this defendant, I mean about this witness and your conversations with this witness?
"A. Yes, sir.
 "THE COURT: Are you basing any part of your testimony on what you have heard other people say about her?
 "A. Yes, sir. Like I stated, just things that I have heard from other people and my own experiences.
 "THE COURT: Have you heard people discuss her general reputation for truth and veracity?
"A. Yes, sir.
"THE COURT: And when was that?
 "A. It was March and April when I was in their acquaintance. I was here from September to March and it was during that time that she was their neighbor.
 "THE COURT: And where did you hear this discussion?
 "A. Mostly in their presence and just from people that she was associated with like coworkers or friends.
 "THE COURT: . . . When were these occasions that you heard people? Is this in the community or just with her coworkers?
"A. Mostly just in her own presence.
 "THE COURT: Have you ever heard any one discuss her general reputation for truth and veracity around in the community?
 "A. Just some people that she has dealings with, coworkers, or has had dealings with.
 "THE COURT: Were they their opinions or what? Or was she present?
"A. No, sir. They were just general opinions.
 "THE COURT: . . . And they were held by people who are her coworkers?
"A. Yes, sir.
 "THE COURT: Do you know her general reputation in Cullman, in this county?
"A. Yes, sir.
 "THE COURT: . . . [H]ow many times have you heard it discussed?
"A. Several times.
 "THE COURT: And where? I am talking about out away from the place where she works?
 "A. Mostly just people that would come to her home like for — bill collector or person of that nature.
 "THE COURT: And how many people are involved in this that you have heard express an opinion?
"A. Be three or four.
". . . .
 "THE COURT: Based on the witness's testimony concerning what he was basing testimony that he knows this witness's general reputation in the community where she lives — that would be the city of Cullman, at the very smallest. Based on what he has said, the Court is not of the opinion he is competent to testify as to what her general reputation is in this community for truth and veracity and would exclude any further testimony in that regard."
The general rule is that if a trial court excludes evidence offered by a defendant, it is the defendant's responsibility to make an offer of proof to preserve for appellate review any error in the trial court's refusal to accept the evidence. However, if the substance of the evidence sought to be admitted is apparent from the context within which the questions were asked, no offer of proof is necessary. See C. Gamble, supra, at § 425.01(3)-(4); Ralph R. Williams, Williams' Alabama Evidence
§ 6 (1967). In discussing the necessity for an offer of proof to preserve error for appellate review, in situations similar to that presented here, the Alabama Supreme Court inKillingsworth v. Killingsworth, 283 Ala. 345, 217 So.2d 57
(1968), stated the following:
 ". . . The true rule on this subject is as follows: If a question is propounded to a witness on the stand, the answer to *Page 1153 
which is prima facie relevant and legal testimony, and the court refuses to allow the witness to answer, this is error, for which a reversal will lie; for the reason, that 'the injury to the party consists in the refusal of the court to permit the answer to be given, and he can do nothing more to prove the wrong done him than to show that he has asked a legal question, the answer to which, by the action of the court, was denied him' — Nailor v. Williams, 8 Wall. 107, [19 L.Ed. 348 (1869)]. Where no answer is given by the witness, as in this case, this does not repel the presumption of injury, provided the question itself is sufficiently definite to indicate the nature of the answer sought to be elicited, and such answer is prima facie relevant, material, and otherwise legal. — Roberts v. State, 68 Ala. 515 [(1881)]. In such a case, it would add little or nothing to the enlightenment of the court, for the counsel to state what is proposed to be proved by the question, because this is shown by the question itself, so far as to justify the admissibility of the answer."
Id. 283 Ala. at 353, 217 So.2d at 64-65 (quoting Phoenix Ins.Co. v. Moog, 78 Ala. 284, 308 (1884)) (emphasis added). See also State v. Kaiser, 109 Ariz. 244, 508 P.2d 74 (1973). Because the question propounded was sufficiently definite to indicate the nature of the answer sought, i.e., whether T.M.A.'s general reputation in the community was good or bad, we find that this issue is preserved for appellate review.
Next, we must determine whether the trial court abused its discretion by ruling that David Gorff, the defense character witness, was not qualified "to testify as to what [T.M.A.'s] general reputation is in [the] community for truth and veracity" and by excluding any further testimony in that regard. We find that it did.
 "One may impeach a witness' credibility by showing . . . his bad general reputation in the community for lack of truth and veracity.
". . . .
 "In order to impeach the credibility of a witness one must first lay a proper predicate to show that the impeaching witness has a personal knowledge of the impeached witness' reputation in the community. The impeaching witness' opinion as to the bad general reputation is not to be based upon what he thinks the other's reputation is but what the community as a whole voices it to be.
 "The traditional rule in this state, as in the remainder of the country, has been that the impeaching witness can only testify to the other witness' reputation in the community where such other lives. However, with the increased mobility of our people, there has been a trend in this country toward recognizing that such is not to be limited to where the witness lives but may be based upon his reputation within any substantial group of people among whom he is well known."
C. Gamble, supra, at §§ 140.01(1)-(3) (footnotes omitted). A person's community may consist of his coworkers. Id. at § 26.02(5).
The quoted passages from the record clearly show that defense counsel established the proper predicate for the admission of Gorff's testimony into evidence. Gorff indicated that he knew the complaining witness's general reputation in the community for truth and veracity. Furthermore, he indicated that he knew her general reputation from the opinions given by her coworkers and friends. We hold that the trial court erred to reversal by sustaining the state's objection to Gorff's testimony concerning the complaining witness's general reputation for truth and veracity.
Accordingly, the judgment of the trial court is reversed, and this case is remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur. *Page 1154