208 So.2d 228

**Saul LEWIS**

**v.**

**STATE.**

**1 Div. 272.**

Court of Appeals of Alabama.

March 12, 1968.

Robt. G. Kendall of Johnston, Johnston & Nettles, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Carl E. Watson, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

This is an appeal from a conviction of burglary in the second degree. Punishment was fixed at six years in the penitentiary.

The Testimony for the state tends to show that the Andrews' Hardware Company in Citronelle, Alabama, was broken into in the early morning hours of August 29, 1966, and watches, firearms, radios, etc., were removed therefrom. Defendants, Saul Lewis, James Wooten and James Williams were surprised during the alleged burglary by Mobile County Deputies Hopkins and Baker.

Samuel H. Andrews, III, testified he was the owner of Andrews' Hardware Company; that the doors were locked on the night of August 28, 1966; and the glasses in the door were intact. When he arrived at the store about 2:50 A.M., on the 29th, merchandise belonging to Andrews' Hardware was scattered on the ground around the rear entrance and some of it was in an old two-door car; that a glass in the rear door of the store had been broken by having a concrete block thrown through it; that the reasonable value of the merchandise in the automobile was approximately $4,000.00.

According to the testimony of Officers Hopkins and Baker, they were parked in their automobile at the police station in Citronelle about 1:50 A.M., on August 29, 1966; that they heard a horn "beep." They drove toward Andrews' Hardware and turned into an alley and observed an automobile parked in back of the hardware store; that the area was well lighted; that there was one person in the automobile and two others, one of whom was defendant, were coming out of the back door of Andrews' Hardware; that the police siren was turned on, whereupon the persons coming from the store "broke and run;" that defendant had merchandise in his hand which he threw down when he saw the officers. Hopkins chased the defendant and Baker gave chase to the other man; no one was arrested at the scene; James Wooten and

one Williams were arrested in Citronelle later in the morning; neither officer knew defendant's name at the time.

Albert Stroh, a deputy sheriff, testified he took part in the investigation of the alleged burglary; that he arrested defendant at his mother's home a day or two after the incident; that he looked in the automobile at the scene the night of the alleged burglary and saw various items that came out of the store; that he later inventoried the items; that the document marked state's exhibit 8 was a list made by him of articles taken out of the automobile; that the defendant, Williams and Wooten were arrested in connection with the alleged burglary; that Wooten gave him information as to who was involved in the burglary; that he arrested defendant after receiving such information.

For the defendant, Mary Lewis, defendant's mother, testified that on the night in question defendant was playing whist at the home of her oldest son; that witness left about 11:00 o'clock and defendant and Ruby Mason were still there when she left.

Ruby Mason, testified she was defendant's girl friend; that on the night of the alleged burglary she went with defendant to the Ebony Social Club; that they left there between 8:00 and 8:30 and went to defendant's brother's house and stayed all night; that to her knowledge defendant did not leave the house that evening.

James Wooten, for defendant, testified he pleaded guilty on the day of trial to a burglary that took place in the latter part of August, 1966; that defendant was not with him when the burglary took place; that he had seen defendant earlier in the evening, about 8:00 or 8:30, in the Ebony Social Club; that defendant was still there when witness left; that he did not see appellant again that evening; that after he was arrested he told the officers that he had seen defendant earlier in the evening.

On cross examination he stated that he also entered a plea of guilty to a charge of grand larceny of the automobile involved in this burglary; that he talked to Officers Stroh and Dees but he did not tell them that defendant burglarized the hardware store; that he did tell them where defendant lived; that he was on parole at the time of the burglary after convictions of robbery; that witness, James Williams and, someone he later learned was Clifton Williams committed the burglary; that he was practically drunk at the time of the burglary.

Albert Stroh, recalled for the state in rebuttal, testified that he and Dees arrested defendant; that Wooten gave him the information as to where he could find defendant and told him that defendant and James Williams, also known as Cocky Williams, were involved in the burglary; that witness did not know where defendant lived until Wooten told him.

Tom Dees, in rebuttal for the State, testified he was Chief Investigator with the Sheriff's Department; that he investigated the Andrews' Hardware burglary; that he and Stroh arrested defendant; that Wooten told him that defendant, James Williams and Wooten committed the burglary; that he did not know where defendant lived until Wooten told him.

On cross examination the witness stated that the record of the arrest would appear on the docket sheet in the Sheriff's office. Whereupon, the docket sheet was obtained from the Sheriff's Department and Dees testified it showed that the arrest was actually made by Deputy Brown, a colored officer; that he remembered that he and Stroh went to defendant's home and were told by defendant's mother that defendant wasn't there; that Brown later picked him up and brought him to Dees and Stroh.

■ The evidence was ample to sustain the conviction of burglary as against the defense of alibi. See 6 Ala.Dig. Criminal Law, ☞572 for cases. There was no error in the refusal of the requested affirmative charge.

■ State's witness, Hopkins was asked on cross examination if he had questioned Williams and Wooten about who was involved in the burglary, or if he was present at any time when anyone else asked them. He answered both questions in the negative. He was then asked if he had talked to any of his fellow officers who had questioned these two. He answered Yes. The state's objection was sustained to this question: "You know then that Williams and/or Wooten stated that earlier in the evening they had been with this defendant?" This ruling was proper. The question called for hearsay testimony.

■ The witness Stroh testified he saw the stolen merchandise in the automobile and that later he personally made the list of items (state's exhibit 8) that were taken from the automobile. We find no merit in counsel's insistence that the list was improperly admitted in evidence because of his objection that "it's not shown that Mr. Stroh here inventoried them as they came out of the automobile."

■ For the purpose of rebutting James Wooten's testimony that he did not tell the officers that defendant was involved in the burglary, the State recalled Deputy Stroh and called Deputy Dees for the first time. Defense counsel objected to their testifying on the ground that the rule had been invoked and that they had discussed the case in the presence of each other; in the presence of Deputy Baker who sat at the State's counsel table during the trial; and divers other persons. The jury was excluded and the following occurred: Mr. Dees stated he was standing around in the hall during the last recess when the state's attorney, defense counsel, Mr. Baker, Mr. Dees and several other people were in the hall; that "we were kidding around out there;" that nothing was said at any time relative to any testimony by Wooten; that the first time Wooten's testimony was mentioned or that he knew Wooten was going to testify was

when the district attorney came back and asked him questions relative to Wooten; that though they were "horsing" around in the hall before that, nothing that was said had any connection with Wooten's testimony.

Mr. Dees stated on voir dire that he was in the hall with the other witnesses during the recess; that the district attorney, defense counsel, witness, Mr. Stroh, Mr. Baker, Mr. Hopkins and Mr. Reynolds Alonzo were present; that they were "somewhat" kidding around about the case; that nobody at any time mentioned anything about Wooten's testifying; that he did not know Wooten was going to be a witness until the district attorney came out shortly before and asked if he had talked to Wooten and at that time nobody was present except the state's attorney, witness, and Mr. Stroh; that earlier when the group was together in the hall nothing was said concerning any witness or any testimony which had been given during the progress of the trial.

It was within the sound discretion of the trial judge to allow the witnesses to testify for the state on rebuttal. Stephens v. State, 250 Ala. 123, 33 So.2d 245. We find no abuse of such discretion.

As heretofore stated Mr. Stroh testified Wooten told them defendant was involved in the burglary. Mr. Dees testified Wooten told him Saul Lewis, James Williams and Wooten committed the burglary. This evidence was admitted over defendant's objections.

■ The testimony of a witness may be impeached by presenting proof showing that he has made statements inconsistent with or contradictory of his testimony. "Evidence of such contradictory statements is admitted only to discredit the witness; it is not affirmative evidence of the facts stated." Jones on Evidence, Fifth Edition, Vol. 4, Section 932, p. 175. See also Phillips v. State, 248 Ala. 510, 28 So.2d 542; Evans v. State, 39 Ala.App. 498, 105 So.2d 831.

■ Defense counsel insists in brief that the judgment should be reversed because of the district attorney's argument to the jury. The incident complained of is as follows:

"MR. PFLEGER: And I might say in passing: He says, 'Oh, here they are with all of their scientific equipment, this valuable stuff;' you take your commonsense and knowledge— you've seen the newspaper articles day by day, and every grand jury recommended what: That the Sheriff's Department and the Police Department be implemented and their salaries be raised because they are undermanned, understaffed and underequipped—

"MR. KENDALL: Your Honor, I agree with the District Attorney that undoubtedly that may be the case, but it's not evidence before this jury.

"THE COURT: Well, I'm going to let him draw his inferences, and I'm going to instruct the jury that it's argument and not evidence before it; overrule the objection."

The record shows the district attorney's argument was in reply to the following statement to the jury by defense counsel:

"MR. KENDALL: But with all the modern, scientific ways of detecting crime at their hands—

"MR. PFLEGER: Object to that, if the Court please; there's no evidence that there is any modern, scientific way at all in their hands.

"THE COURT: Well, I don't want to overly restrict either one of you; I overrule the objection.

"MR. PFLEGER: If the Court please, there is no evidence in there, and I know for a fact they don't have all that—

"MR. KENDALL: Your Honor, I object to any further—

"THE COURT: He can argue his inferences; I overrule the objection."

We find no reversible error in this ruling of the court.

The judgment is due to be and hereby is affirmed.

Affirmed.