315 So.2d 122

**Jerry Jerome CROWDEN**
**and**
**Daniel Wesley ASKEW**

v.

**STATE.**

**8 Div. 553.**

Court of Criminal Appeals of Alabama.

April 22, 1975.

Rehearing Denied May 27, 1975.

John W. Davis, III, Montgomery, for appellants.

**326**

William J. Baxley, Atty. Gen., and C. Lawson Little, Asst. Atty. Gen., for the State, appellee.

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

Each appellant-defendant was separately indicted on three counts for second degree burglary of a gasoline filling station, grand larceny, and receiving and concealing stolen property. The jury returned a general verdict of guilt against each one. The trial court sentenced each defendant to three years imprisonment in the penitentiary. Judgment against each was duly entered, and this appeal follows.

The defendants were jointly tried by agreement and their appeals were consolidated. They were represented at *nisi prius* by employed counsel, but are before this Court as indigents, with free transcripts and appointed counsel. Counsel on appeal is not the one who represented the defendants in the lower court.

Some phases of this opinion will be segregated and addressed to each appellant. We will first make a general statement as to some of the evidence.

Mrs. Peggy Pratt, the first witness for the State, testified that she was an employee of the filling station, the subject of the burglary; that she closed about 11:00 P.M., December 11, 1973, and securely locked the burglarized area; that when she arrived the next morning, about 6:00 A.M., there were some law enforcement officers present. She described the physical setup of the station and how it was broken into during the night. She also testified that a telephone located in an unlocked area inside the building was torn from its mount. She testified that in the locked area, she left some one dollar bills and coins of various values, all totaling $50.00, in a cigar box as business change available when the station opened the next morning. She testified that this money was missing the next morning; that after the burglary she was not shown any of the stolen money and never identified it.

Deputy Sheriff James Camp of Lauderdale County testified that he was working alone on the night of December 11, 1973; that he arrived at the filling station about 2:15 A.M. or 2:20 A.M.; that Officer Jones of the Lauderdale County Sheriff's Department was there. Officer Camp described the condition of the building that was burglarized, and also testified that the telephone was ripped or torn from its anchorage to the wall; that Officer Jones called Chief of Police Aday of Killen, who came to the scene. Officer Jones and Officer Camp left to go to Sheffield before Chief Aday arrived; that they received a call from Sheffield about some suspects. This call came about "45 minutes or an hour after 2:15 or 2:20 A.M." The suspects were in jail, and Officer Camp saw both of them. Some items were turned

over to him by the police in Sheffield; that he brought the items back to the scene and turned them over to Chief Aday who was there investigating and taking pictures. These items were a piece of wood and a little piece of copper wire.

Officer Samuel Watkins of the Sheffield Police Department next testified for the State. He testified that he received a radio message about the break in in Lauderdale County and that about 3:10 A.M. on December 12, 1973, he stopped an automobile being driven by Jerry Jerome Crowden. The appellant Askew was also in the automobile. We will separately refer to each defendant at this time.

## CASE AGAINST CROWDEN

Officer Watkins testified that an automobile was driven through a stop sign; that he stopped it and arrested Crowden for the traffic violation; that Crowden was under the influence of intoxicating beverages; that they handcuffed Crowden and Officer Berry drove him in the police car to city jail, where other procedure followed. The witness took the Crowden automobile with Askew to the jail. Other disposition of Askew was made as will later appear.

Officer Watkins testified that Crowden, who was under arrest, was taken inside and searched; that the search took place about fifteen or twenty minutes after the defendant was stopped; the search occurred while he was booking him; that Crowden had not been placed in a jail cell at that time. They found on the defendant $11.20 in coins, ten $1.00 bills, and a piece of wood, later marked Exhibit 7 for identification. The Officer stated that the piece of wood was handed over to Officer Camp and Officer Jones.

All of this evidence of Officer Watkins, relative to the arrest of Crowden, the subsequent search at the jail, and the fruits of the search were adduced over the objection of the defendant who contended that it should not be adduced before the jury; that he was entitled to voir dire examination before the trial court. The objection was overruled.

After lunch, the trial court stated, for the record outside the presence of the jury, that the alleged piece of wood had not been offered in evidence; that the witness Camp had not been allowed to testify that he compared the wood with other pieces of wood allegedly coming from the burglarized place.

The court then proceeded, all outside the presence of the jury, to give the defendant the privilege of offering in evidence anything he wished to offer relative to any search of the "defendants" upon their arrest.

The defendant then took the stand, outside the presence of the jury, and denied the burglary. He denied running a stop sign or that he was intoxicated when the officers stopped the automobile. He contended that he never was searched when he was arrested or in the jail house; that the officers did not have a warrant for his arrest or a search warrant. (The State did not offer any evidence to that effect.) Despite Officer Watkins' testimony to the contrary, the defendant contended he was not "patted down." The witness also testified that he was not searched at any time. After he got to the jail, he asserted that Officer Berry told him to pull out everything in his pockets and made him pull his shoes off; that he took a balloon test for drunkenness. He denied that the officers found a piece of wood on him.

Officer Watkins was called by the defendant. The testimony of this Officer was substantially the same as before the jury. We will not burden this opinion with details, however, he did testify that Officer Berry took the items from Crowden; that he saw "them" when "they" put them on the counter, but he could not say who put the items there; that he "was writing Crowden up;" that he saw Officer Berry put them in the "sack."

He repeated certain evidence about which he testified before the jury, prior to the voir dire. He also stated that it was standard procedure to take items from a defendant's pockets after he had been arrested and about to be placed in a cell. Defense counsel then observed that he was satisfied on the point of procedure. The trial was then resumed before the jury.

Officer Watkins resumed his testimony. He testified that either Crowden laid the piece of wood (identified as Exhibit 7) on the table or Officer Berry put it there. We will not delineate further details which largely were the same before and during the voir dire.

Officer James Berry, employed by the City of Sheffield, was called next as a witness by the State. This testimony in many areas relative to the arrest of the defendant corresponded to that of Officer Watkins. Officer Berry testified that the defendant, Crowden, was requested to place the items on the table. The defendant placed $11.20 in coins and ten $1.00 bills on the table. He identified some cigarettes taken from the defendant's glove compartment and stated that at the jail he searched the defendant for anything not removed and found Exhibit 7, the piece of wood. He testified that Officer Camp and Officer Jones brought along a smaller piece of wood to compare it with Exhibit 7; that the smaller piece of wood brought by Officer Camp and Officer Jones and Exhibit 7 matched perfectly, meaning that the two pieces fit snugly. This "matching" testimony was adduced by the defendant on cross examination.

Jimmy Lee Jones, Deputy Sheriff of Lauderdale County, testified that he was the first officer on the scene of the alleged burglarized station; that he arrived following a call about 2:15 A.M. He was shown Exhibit 7 and testified to the best of his knowledge that it came off the telephone mount at the station. He was shown the smaller piece of wood and with respect to it, he testified according to his best recollection that he saw it at the Shef-field Police Station. He further stated that all three pieces of wood shown him were turned over to Officer Camp and himself in an envelope that was transferred to Chief Aday of Killen.

The witness on cross examination testified he received a call relative to the burglary about 12:00 P.M. and that he arrived there about 2:15 A.M.

Chief Aday was the next witness for the State. This officer of the town of Killen testified that he arrived at the station about 4:45 A.M. He then described the alleged break in. The District Attorney then showed him a piece of wood, Exhibit 12, which he identified as having been on a mount of a telephone that was on the wall in the filling station here in question. They took it from the mount and turned it over to the State Toxicologist. The court then admitted the wood in evidence as Exhibit 12.

He was then shown Exhibit 7, another piece of wood he got from Officer Camp after he (Camp) had gone to Sheffield and returned. He turned this over to the toxicologist. He got another piece of wood from Officer Camp and delivered it to Mr. Kilbourne. This time the State offered Exhibit 7, the larger piece of wood in evidence. The defendant's objection to such introduction was sustained.

He was then shown what the witness stated appeared, "to be a small hook-up that you would attach to an electrical circuit and a metal part."

John Kilbourne, the State Toxicologist, was next introduced as a witness for the State. Preliminary to his testimony on the merits involved, this witness, on examination by both parties, testified as to his experience, training and qualifications in the field anent his testimony on the involved merits. The trial court ruled he was qualified as an expert in this field.

We are unwilling to disturb this ruling. It appears to us he was qualified to testify as an expert in the field. We determine it

unnecessary to delineate his training and experience.

This witness, after preliminary examination as to his qualifications as an expert, testified he compared Exhibit 7, the piece of wood taken from the defendant Crowden, with Exhibit 12, a smaller piece taken from the telephone mount at the burglarized station; that the "grain pattern on this small piece of wood was identical to the wood identified as from the telephone mount." At this point, the State offered in evidence, and the trial court, over defendant's objection, admitted Exhibits 7 and 13. This Exhibit 13 was a photograph of a portion of Exhibits 7 and 12, the two pieces of wood. This photograph was taken by the witness.

The witness then testified that from his comparison of the physical characteristics, Exhibits 7 and 12 were originally a "portion of the same."

We will not undertake to delineate all details of Mr. Kilbourne's testimony. We think the above is sufficient.

After the State rested its case, the defendant's counsel moved the court as follows:

"MR. GRAHAM: Let the record show, may I please, the Court, that the Defendants, separately and severally, move the Court to exclude the evidence of the State and to discharge the Defendants, separately and severally, and assign the following grounds:

"1. The State has failed to prove a prima facie case against the Defendants of any offense charged in the Indictment.

"2. The State has failed to prove the venue of this case.

"3. The State has offered nothing more than bits of evidence unconnected, unsubstantiated, and certainly insufficient to sustain any conviction of either of the Defendants for any offense for which they are being charged.

"That's all on that Motion.

"THE COURT: THE COURT OVERRULES THE MOTION.

"MR. GRAHAM: WE EXCEPT."

We omitted to note in our delineation of the evidence that there was ample evidence to show that the burglarized filling station was located in Lauderdale County.

We now address and consider appellant's contentions of error in certain areas of the trial.

## I & II

Appellant asserts that the search of appellant Crowden in the police station was illegal and that evidence relating thereto are the fruits of the search were inadmissible over defendant's timely and appropriate objection which was overruled. This search was made without a search warrant. We are not in accord with this contention. We first point out that the defendant Crowden was driving an automobile which a police officer stopped because he ran a traffic stop sign in the presence of the officer or immediately in the range of his vision. This traffic violation was a misdemeanor, and the officer was authorized to arrest the defendant therefor. Title 15, § 152, Recompiled Code of Alabama 1958.

It further appears, supra, that the defendant was there, was placed under arrest, and immediately after a "pat down" was taken to the police station in a police car driven by Officer Berry. This station was reached in about fifteen or twenty minutes. Thereupon Officer Berry directed him to unload his pockets, and he was physically searched. In either event, this procedure was legal. The results are the same. The defendant was unwillingly required to part with the contents of his pockets. This action of the police took place while one of the officers was "writing him up" and before he was placed in a cell.

We think the case of *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), supports the ruling of

the trial court in admitting the evidence asserted to be error. We quote:

"Caruso [United States v. Caruso, 2nd Cir. 1966, 358 F.2d 184], is typical of most cases in the courts of appeals that have long since concluded that once the defendant is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing on the one hand and the taking of the property for use as evidence on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail and at a later time searched and taken for use at the subsequent criminal trial. The result is the same where the property is not physically taken from the defendant until sometime after his incarceration.

"In upholding this search and seizure, we do not conclude that the warrant clause of the Fourth Amendment is never applicable to post-arrest seizures of the effects of an arrestee. But we do think that the Court of Appeals for the First Circuit captured the essence of situations like these when it said in United States v. DeLeo, supra, 422 F.2d [487], at 493 (footnote omitted):

'While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape and *evidence*.' "
(Emphasis added.)

### III

The next contention of error is the failure of the trial court "to determine the admissibility of the testimony outside the presence of the jury." Appellant asserts that the first occasion arose when the State sought to introduce, through Officer Watkins, testimony directly arising out of a questionable search and seizure. Appellant contends that the issue is identical to voluntariness of a defendant's confession. Appellant relies on *Garsed v. State*, 50 Ala.App. 312, 278 So.2d 761. Some of the preliminaries in that case were heard in the presence of the jury while the remainder was determined *in camera*. This procedure was held error to reverse. *Duncan v. State*, 278 Ala. 145, 176 So.2d 840.

The law applicable to admission of a confession does not, if at all, have application to admission of evidence relative to validity of a search and seizure. In the former, the trial court first determines the voluntariness of a confession and, if voluntary, then permits submission of the evidence before the jury, who determines its weight and credibility. The trial court determines only the issue of voluntariness not credibility or weight.

The trial court hears the evidence *in camera* relevant to the validity of the search, a legal question which is not submitted to the jury. If legal, the evidence anent the search is submitted to the jury.

Besides, in the instant case, Officer Watkins testified before the jury about the search of the defendant and the finding of the piece of wood on him. Evidence was admitted concerning some of the details of the search. The court thereupon proceeded *in camera* hearing when and where the defendant testified and also introduced and examined Officer Watkins relative to the search. After the hearing *in camera*, the court without express ruling on the validity of the search, proceeded with the hearing before the jury. This hearing indicated that the court sustained the validity of the search.

We note here that the relevancy of the piece of wood taken from the person of the defendant was not presented to the

jury until later in the trial, and after *in camera* hearing, nor was there any testimony comparing this piece of wood with any other piece of wood. For aught appearing, the jury was not informed the wood had any relevancy. The piece of wood as a connecting link was not shown until later in the trial. We hold that the defendant did not suffer an injury by adduction of testimony relative to the wood and details of the search prior to the *in camera* hearing.

### IV

■ We are unwilling to hold that the trial court erred in its holding that witness Kilbourne, the State Toxicologist, had qualified as an expert in his testimony dealing with the comparison of the fragments of wood, one of which came from the telephone mount, supra, and the other from the person of the defendant while under arrest at the police station. We accord the ruling to be free of error.

We note that there was no motion for a new trial and no written charges for the defendant. We think the appealed judgment against the appellant Jerry Jerome Crowden should be affirmed. It is so ordered.

### CASE AGAINST ASKEW

It appears from the evidence that the appellant was a passenger or an occupant in the Crowden automobile when it was stopped for that the driver, Crowden, ran a stop sign. Askew was not placed under arrest, but did ride to the police station in the Crowden vehicle driven by a police officer. He was permitted on such arrival to go on his way. About 4:30 or 4:40 P.M., following his departure from the police station, free of arrest or detention, he was picked up and returned to the police station under arrest and placed in jail. Before being placed in jail while under arrest, and after being "informed of his rights," items of personal property were taken from him.

Officer McCluskey, the arresting officer, testified, "There was quite a bit of change and some dollar bills—$33.72 to be correct." He testified there was eleven $1.00 bills and $22.72 in change. Nothing else was taken from him. It also appears that none of this money taken fron Askew was identified as having been taken from the burglarized station, and none was introduced in evidence. It does not appear that Officer McCluskey had any warrant of arrest for Askew. He acted on a call from "the station" that Askew "was not in any condition to drive, that he was intoxicated."

■ We do not find any evidence from which the jury could infer that this defendant committed or participated in the alleged burglary. Mere presence in the car with Crowden several hours after the burglary, which must have occurred between 11:00 P.M. and 1:00 A.M., December 11 and 12, 1973, was not sufficient. Association with a felon without more will not support a conviction. We note this defendant did not take the stand. The money taken from the defendant was not identified as having come from the burglarized station nor was it offered in evidence.

We hold that the trial court erred in overruling this defendant's motion at the conclusion of the State's case to exclude the evidence and discharge him. The judgment against this defendant is reversed and the cause is remanded.

The foregoing opinion was prepared by the Hon. Bowen W. Simmons, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Affirmed in part; reversed in part and remanded.

All the Judges concur.