329 So.2d 133
**David Michael ISBELL**

v.

**STATE.**

**6 Div. 986.**

Court of Criminal Appeals of Alabama.

Feb. 3, 1976.

Rehearing Denied March 9, 1976.

---

Charles C. King, Huntsville, for appellant.

William J. Baxley, Atty. Gen., and Ellis D. Hanan, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Buying, receiving, concealing, or aiding in concealing stolen property; sentence: three years imprisonment.

The appellant in this case was charged with burglary in the second degree in Count I, grand larceny in Count II, and buying, receiving, concealing, or aiding in concealing stolen property in Count III. The jury returned a verdict of guilty of Count III as charged in the indictment.

Phillip Taylor, the State's first witness, testified that he had gone hunting on November 19, 1974, and that his wife had gone to Huntsville to visit someone. When he returned home on the 21st, he noticed a hole in the back door and found the following items missing from his gun case: a Remington .12 gauge shotgun, Serial No. 5197701; an extra barrel for that gun; an H and R muzzle loader; a .45 caliber gun, Serial No. AL208721; a .22 caliber single shot rifle; a Winchester Buffalo Bill, 30–30 rifle, Serial No. 114567; a Bear Kodiac, Serial No. KT495591; a 52-inch Shakespeare arrow bow; a Universal scope; and a quiver of arrows that was attached to the bow. He estimated the value at $650.00 to $700.00. All of the items belonged to Phillip Taylor except the .22 caliber single shot which belonged to his father.

Taylor stated that he had been knowing the appellant approximately fifteen years, and the appellant had been a guest in his home from time to time. The appellant had been in his home approximately one month before he left on his hunting trip, and he believed that he asked the appellant to go with him.

On cross examination by the defense, Taylor said that he saw the appellant near the Star Cleaners in Arab the day after he discovered the theft. He testified that he knew the appellant was majoring in law enforcement in college. The appellant said that he "might know something" about the break in and said "Well, I have some friends, let me ask some questions." Taylor then asked appellant to let him know if he found out anything about his guns. Taylor testified that he got the guns back, receiving them at the police station in Arab on the morning of November 27, 1974.

When Roy Michael Whisenant was called to the stand, counsel for appellant informed the trial court as follows:

"Your Honor, I have interviewed this witness and his testimony may tend to incriminate him, and I think that he should be advised of his fifth amendment rights before he testifies in this case. . . ."

The above statement was not made as an objection, and the court proceeded with the case. Whereupon, Whisenant testified that he was with the appellant on November 26, 1974, at about 7:00 P.M. when he picked up the appellant at his home. Whisenant had already gone by Ricky Harper's house

and picked him up at 6:30 P.M. After leaving the appellant's house, they drove to a dirt road near Thompson Falls. They stopped, and the appellant and Harper got out of the car. Whisenant said he had been awake three days studying for exams and was sleepy and may have dozed off. However, he remembers the appellant and Harper getting back into the car. He stated that he did not see them put anything into the car. After he heard the door shut, he looked in the back and saw a large black plastic bag.

The trio drove back by the appellant's house for him to get his coat. The appellant went into his house, and Ricky Harper stayed in the car with Whisenant. While the appellant was in his house, Whisenant looked in the bag and testified that it contained guns. Ricky Harper did not testify in the trial.

Whisenant said he suggested carrying the guns to show them to his cousin in Morgan City, as his cousin was an avid hunter. Whisenant stated that neither the appellant nor Harper ever mentioned anything about selling the guns. He said the appellant suggested taking the guns to Phillip Taylor's house.

The police stopped Whisenant, on the way to his cousin's house, and arrested him for reckless driving. All three were taken to jail. While in jail, Whisenant signed a sworn statement.

During Whisenant's direct examination, the trial judge stopped the testimony and excused the jury from the courtroom. The trial judge then stated *inter alia*:

"But, there is a possibility at this point that you could be guilty if you had knowledge or reason to have knowledge or reason to believe that these were stolen guns, or that they were not the property of the two boys that were with you —either one of them. That at this point after you met the police, if you at that point, it is possible that you could have become possibly guilty of aiding or rather concealing or aiding in the concealing of stolen property. So, I feel it only fair to tell you that and advise you at this point there is a possibility that you could incriminate yourself if you testify further with regard to this case, and that, as such, you have a right to remain silent. You don't have to testify where it comes to incriminating yourself. And, of course, that be the case then, any further questions that the State might ask you, you have a right to refuse to answer them on the grounds that it might tend to incriminate me."

The prosecuting attorney then stated to the court that the witness had been given immunity, because he had appeared before the grand jury and testified. He stated to the court that the witness had no charges pending against him, and that no charges would be placed against him. The trial judge returned the jury to the courtroom and then recessed the trial for lunch.

After lunch, Whisenant continued his testimony, but when asked how the guns got in the automobile, Whisenant stated that he put them there himself. The prosecution claimed surprise and brought out the fact that Whisenant had just had lunch with the appellant. The prosecution then read the statement which the witness had given to the police chief while in jail. The statement was read over the objection of the defense, purportedly for the purpose of refreshing the recollection of the witness. The statement was as follows:

" 'I, Roy Whisenant, went to Ricky Harper's house. Ricky and myself went to Mike Isbell's house in Arab. We picked Mike up and drove down to Thompson Falls. Mike and Ricky said they had some guns they needed to sell. Ricky said they had one 30–30 lever action. I told them I had a cousin at Morgan City that would buy it. Ricky Harper and Mike Isbell got out of my car at Thompson Falls and got four guns, another barrel and scope. We left there and come back to Arab. The police stopped

us on 10th Street, N.W. We had the guns in the back seat. I did not know the guns in my car were stolen.' "

After reading the statement, the District Attorney asked the witness if that statement was true. Whisenant stated that the statement was false. He said that he signed it, however, it was false. On cross examination, he explained that he had been awake for approximately three days, studying for college mid-term examinations, when he was arrested. He said that he had taken some "no-doze" and some prescription pills to stay awake and that he signed the statement so the police would let him out of jail and he could go take his examinations the next morning. Whisenant said that he did not make a statement to the police that the appellant and Ricky Harper said that they had some guns to sell. He further testified that he stopped the car near Thompson Falls, that Harper and the appellant got out to relieve themselves and got back into the car. He did not see them put the guns in his car. Whisenant said that after the appellant saw the guns in the back of his car, the appellant suggested going to Phillip Taylor's house. Whisenant again stated that he put the guns in the car himself.

Chief Jack Banister, of the Arab Police Department, testified that on November 26, 1974, between 8:30 and 8:45 P. M., he saw Mike Whisenant, Robert Harper and the appellant when they were brought to the police station by Officers Bradford and Maze. He stated that he was called out to a car containing some guns which had been driven to the station by Officer Bradford.

Vernon Bradford, a policeman for the City of Arab, was one of the arresting officers. He arrested Whisenant for reckless driving and arrested Harper and the appellant for disorderly conduct. Officer Bradford said that he saw the stolen items in plain view inside Whisenant's car at the time of the arrest. Larry Waldrop, a deputy sheriff of Cullman County, and James Maze, a deputy sheriff of Marshall County, both testified to the description of the stolen items and accounted for the chain of custody.

■ At the end of the State's testimony, the defense moved to exclude the State's evidence on the grounds of failure to prove a prima facie case and the insufficiency of the evidence, which among other grounds, were stated in detail to the trial court. The motion was overruled. The defendant requested the affirmative charge and the affirmative charge with hypothesis, which were refused. Counsel for appellant likewise filed a motion for a new trial, challenging the sufficiency of the evidence and setting forth numerous other grounds. The trial court overruled the motion for a new trial, and counsel for appellant then filed in the record on appeal, thrity-nine assignments of error. Although assignments of error are no longer necessary in a criminal appeal per Title 15, § 389, Code of Alabama 1940, counsel for appellant, out of an abundance of caution, has endeavored to preserve any and all errors possible for review by this Court. By appellant's motion to exclude the State's evidence, his request for the affirmative charge and by his motion for a new trial, the weight and sufficiency of the evidence is indeed before this Court for review.

■ Both the motion to exclude the State's evidence and the request for the affirmative charge are sufficient to raise the issue of the use of uncorroborated testimony of an accomplice as a basis for conviction. *Alexander v. State*, 281 Ala. 457, 204 So.2d 488 (1967); *Leonard v. State*, 43 Ala.App. 454, 192 So.2d 461 (1966); *Peoples v. State*, 56 Ala.App. 290, 321 So.2d 257 (1975).

I

The issue presented by the appellant is whether Whisenant's statement was corroborated by other evidence. This becomes an issue only if Whisenant's prior written

statement was admissible and if it may be considered substantive evidence of the crime charged.

The only statement incriminating to the appellant, made by Whisenant in the course of the trial, did not come from the witness stand, but was a statement purportedly given to Chief Banister after his arrest, and read into evidence by the District Attorney.

Whisenant's verbal testimony in the trial was not incriminating to the appellant. It was only when the prosecution claimed surprise that the incriminating statement came into evidence in any form. The prosecution was undoubtedly surprised by testimony favorable to the defendant coming from the State's chief witness who supposedly was to testify against the defendant.

■ Cases in this jurisdiction indicate that although one may not generally impeach his own witness, there is an exception. When put to a disadvantage by unexpected answers, a party may, for the purpose of showing surprise or for refreshing the witness' recollection, ask his witness if he had not made prior statements contrary to his instant testimony. This is permissible, after proper predicate, even though its incidental effect is to impeach the witness' testimony. *Edwards v. State,* 51 Ala.App. 433, 286 So.2d 308, cert. denied, 291 Ala. 777, 286 So.2d 313 (1973), is directly in point. Also see: *Marcum v. State,* 39 Ala.App. 616, 107 So.2d 899 (1958); *Woods v. State,* 37 Ala.App. 668, 74 So.2d 535 (1954); McElroy, *Law of Evidence in Alabama* (2nd ed.), § 165.01(7)(a), p. 387.

In *Jarrell v. State,* 35 Ala.App. 256, 50 So.2d 767 (1949–50), after remandment by the Alabama Supreme Court, this Court held at p. 263, that the prosecuting attorney should have been allowed to clarify inconsistent statements of a State's witness. In that case, the witness gave evidence which was contradictory in some aspects with previously given testimony. The prosecution asked the witness several questions with reference to his former testimony, directing his attention to certain specific replies to questions, and asked whether or not those answers were given. Thus, the substance of the prior conflicting statement was properly put before the jury in allowing the prosecutor to ask the witness if he had made such statements.

■ It, therefore, appears that under the theory of surprise, the prosecution may elicit from a witness that he in fact made prior contradictory statements, and may elicit from the witness the contents of prior statements through questioning. However, the prosecution would not be allowed to bring in other parties to prove the contents of the prior contradictory statements.

In the instant case, the contradictory matter was elicited by questioning the witness. Chief Banister was not used by the prosecution to prove the contents of the statement in any manner. After being surprised by the testimony of Whisenant, the District Attorney engaged him in the following questions:

"Q. And I will show you this piece of paper and ask you if you signed that piece of paper there at 9:15 or about that time, p. m., at the police station of Arab in the presence of Officer Jack Banister and Howard Martis? Is that your signature?

"A. That is my signature on the paper.

"Q. Did you sign it at that time?

"A. Yes, sir, I did.

"Q. And to refresh your recollection—"

After several objections and voir dire examination by defense counsel, the appellant stated:

"I never said that they had any guns to sell."

The District Attorney then stated, in pertinent part:

" . . . I will ask you if you made this statement, now and I will read it to you from the statement on 11–26–74, about 7:15?"

Another defense objection was overruled whereupon the District Attorney read the statement and concluded by asking if it were true. Whisenant stated, "That statement is false. I signed it, but it is false."

Assuming, from the foregoing authorities, that it was proper for the prosecution to question its witness in the above manner, was the statement read by the District Attorney substantive evidence of the crime charged?

In Federal cases, we find that although one's own witness may be impeached, that impeachment is for the purpose of removing the adverse effect of surprise testimony, and cannot be used for any other purpose. *United States v. Dobbs,* 448 F.2d 1262 (1971) (5th Cir.). In point with the principle at issue in the instant case is the proposition of law set out in *Eisenberg v. United States,* 273 F.2d 127 (5 Cir.1959). The Fifth Circuit Court of Appeals there stated the view that, when caught by surprise, a prior inconsistent statement of a party's own witness is admissible for impeachment purposes, but such statement cannot be used as substantive evidence of the facts stated. That Court went on to quote the rule that, " . . . 'if the only evidence of some essential fact is such a previous statement, the party's case falls' . . . . "

*Eisenberg,* cites *Southern Railway v. Gray,* 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030 (1915), wherein the United States Supreme Court held that:

" . . . the contradictory statements can have no legal tendency to establish the truth of their subject-matter. *Donaldson v. New York,* N.H. & H. R. Co., 188 Mass. 484, 486, 74 N.E. 915; *Mc-*

*Donald v. New York C. & H. R. R. Co.,* 186 Mass. 474, 72 N.E. 55; *Com. v. Starkweather,* 10 Cush. 59; *Sloan v. New York C. R. Co.,* 45 N.Y. 125; *Purdy v. People,* 140 Ill. 46, 29 N.E. 700."

Alabama, as early as 1888, adopted the rule that while a witness may be impeached by the use of prior contradictory statements, that such statement, " . . . should not be treated as original evidence of the facts of the case, nor be received for any other purpose than that of contradicting or impeaching the witness—*Jones v. Pelham,* 84 Ala. 208, 4 So. 22. . . . " *Kennedy v. State,* 85 Ala. 326, 5 So. 300. The Courts of this state have consistently held that the use of prior inconsistent statements, as used in the instant case, may not be considered as substantive evidence to prove the crime. *Lewis v. State,* 44 Ala.App. 319, 208 So.2d 228 (1968); *Lynn v. State,* 37 Ala.App. 400, 69 So.2d 485 (1954); *Skinner v. State,* 36 Ala. App. 434, 60 So.2d 363, cert. denied, 258 Ala. 713, 60 So.2d 367 (1952); *Brown v. State,* 31 Ala.App. 233, 14 So.2d 596 (1943), cert. denied, 244 Ala. 597, 14 So.2d 598; *Manning v. State,* 217 Ala. 357, 116 So. 360 (1928).

The latest expression on this point of law by the Supreme Court of Alabama comes in the civil case of *Cloud v. Moon,* 290 Ala. 33, 273 So.2d 196 (1973). Justice Merrill, citing *Lewis* and *Eisenberg,* supra, held that the prior inconsistent written statement of a hostile witness called by the plaintiff could not be used as substantive evidence to establish the defendant's liability.

The *Kennedy* case, supra, indicates that the proper method of limiting the effect of the impeaching statement would normally be by proper instruction given to the jury. However, where the only evidence incriminating to the defendant is the impeaching statement, a limiting instruction would not be appropriate, since the insufficiency of the evidence would not justify the case being submitted to the jury, unless it be

submitted on the affirmative charge re-quested by the defendant.

■ Thus, Whisenant's prior written statement, not being substantive evidence, will not support the conviction.

## II

The next issue is whether there was other evidence, from which the jury could draw an inference of guilt, to warrant submission of the case to the jury.

In the instant case, the appellant was an occupant in Whisenant's automobile several days after the theft was discovered. There is no evidence whatsoever to connect the appellant with the break in or the theft. There is only evidence that he was riding in an automobile, owned and operated by another person in which the stolen guns were found.

In *White v. State*, 48 Ala.App. 111, 262 So.2d 313 (1972), the fact that the appellant, when arrested, was in the automobile of another, which contained the proceeds of a recent robbery, was sufficient corroboration of the testimony of an accomplice, when coupled with evidence of flight after the crime. Likewise, in *Phiffer v. State*, 44 Ala.App. 611, 217 So.2d 823 (1969), this Court held to be sufficient corroboration, "The uncontroverted fact that the appellant was arrested along with two alleged accomplices while riding in the vehicle which contained the stolen property in question." However, both cases differ considerably from the instant case in several aspects.

In *Phiffer*, there was testimony by three State's witnesses who saw the crime in progress. They saw, " 'a white Buick about a '62 or '63, and had an Eat More Beef tag on it . . . ,' " and saw " 'two colored fellows behind the car with the trunk up.' . . . " one man later walking down the street with a television set in each hand, and one State's witness immediately called the police. A police sergeant

testified that he received a radio dispatch describing the automobile and shortly thereafter, saw a car fitting that description and stopped it. He saw two television sets and a stand on the back floorboard and then placed the defendant and others under arrest for burglary and grand larceny. Thus, in *Phiffer*, we had three eye witnesses observing the crime in progress, seeing three men in the process of placing television sets in the automobile. There, we also had an apprehension of the suspects almost immediately after the crime.

In *White*, there was likewise an apprehension immediately following the robbery, after an automobile chase by the police. The defendants were in the automobile, having been described by make and were identified as being at the place of the robbery immediately prior to the robbery being discovered.

■ It is important to note that in both *Phiffer* and *White*, supra, the evidence of the appellant's presence in a car containing *recently* stolen goods, was not adjudged sufficient to support the conviction, standing alone. The presence of those defendants in the vehicle in question was only held to be sufficient to corroborate the testimony of an accomplice. It is well settled that evidence corroborating the testimony of an accomplice need not be sufficiently strong of itself to support a conviction; it is sufficient if it legitimately tends to connect the accused with the offense. *Cunningham v. State*, 54 Ala.App. 656, 312 So. 2d 62 (1975); *Kelsoe v. State*, 54 Ala.App. 179, 306 So.2d 47, cert. denied, 293 Ala. 764, 306 So.2d 50 (1954); *White*, supra.

The appellant contends that although he was in the automobile in which the stolen items were found, that the automobile belonged to Whisenant and thus the stolen guns were in Whisenant's constructive possession. He contends that his mere presence in the car does not make him a party to the crime, citing *English v. State*, 38

Ala.App. 377, 84 So.2d 673 (1956). There, English's conviction was affirmed on the basis of finding stolen goods in *his* automobile on the morning following the theft. This Court held English to be in "constructive possession" of the recently stolen goods which was there again sufficient to corroborate the testimony of an accomplice.

In *Lawson v. State,* 38 Ala.App. 322, 82 So.2d 812 (1955), this Court stated that the unexplained possession of recently stolen goods raises an inference from which the jury may infer guilt. Although that case concerned larceny rather than buying, receiving, etc., it was cited in *English,* supra, for the following proposition:

"Possession is not limited to actual manual control upon or about the person. If under one's power and dominion the thing is possessed. That the appellant had knowledge of the presence of the stolen groceries can reasonably be inferred from his possession and control of the truck. . . ."

In *Booker v. State,* 151 Ala. 97, 44 So. 56 (1907), Chief Justice Tyson stated:

"It is undoubtedly true that, in order to sustain a conviction for receiving stolen property, the defendant must be shown to have had a control over the property. . . ."

See also: *McConnell v. State,* 48 Ala.App. 523, 266 So.2d 328, cert. denied, 289 Ala. 746, 266 So.2d 334 (1972); *Milam v. State,* 240 Ala. 314, 198 So. 863 (1940).

In the recent case of *Crowden and Askew v. State,* 55 Ala.App. 325, 315 So.2d 122, cert. denied, 294 Ala. 756, 315 So.2d 128 (1975), this Court held that a co-defendant's mere presence in an automobile with the defendant recently after a burglary would not be sufficient evidence from which the jury could infer that the co-defendant committed or participated in the crime of burglary, grand larceny or receiving and concealing stolen property.

In the instant case, the appellant was a passenger in Whisenant's automobile at the time of the arrest. He was not a passenger immediately following discovery of the break in or larceny, neither was he fleeing from the police. Pursuant to the above authorities, his mere presence in the automobile would not constitute constructive possession of the stolen items, since he neither owned or operated the vehicle.

In the absence of a showing that he knew the guns to be in the car, knew them to be stolen and exercised some control over them, his presence in the car, standing alone, would not be sufficient for a conviction. While such circumstances may possibly tend to corroborate the statement which Whisenant gave the police, it is totally insufficient to support a conviction in and of itself. The appellant's motion to exclude the State's evidence should have been granted.

Reversed and remanded.

All the Judges concur.