Woody Berry, the appellant, was charged in two separate indictments with receiving a stolen automobile and with receiving three stolen firearms. After a jury trial, he was convicted of two offenses: receiving stolen property in the first degree and receiving stolen property in the second degree. He was sentenced as a habitual offender to life imprisonment, and to 15 years' imprisonment, respectively. On this appeal from those convictions, the appellant raises three issues.
 I
The appellant claims that his in-court identification by State's witness Wayne Kimsey was tainted by an impermissibly suggestive pretrial photographic array and should have been excluded.
The photographs are not before us on appeal. However, the record indicates that the array consisted of the photographs of 26 white males, including the appellant. Twenty-five of the men were pictured with both a frontal and a profile view. The appellant alone was pictured only frontally. Detective William Adams of the Birmingham Police Department testified that he assembled the photographic array. He collected a group of 25 "mug shot"-type photographs taken at the Birmingham City Jail and added to that the appellant's photograph, which was a mug shot taken at the Jefferson County Jail. Adams explained that the appellant's photograph differed from those of the other 25 subjects because the routine procedure at the city jail was to take two pictures, one frontal and one profile, of its inmates, whereas the practice at the county jail, where the appellant was photographed, was to take only a single frontal shot.
Although the photographs are not in the record, we assume without deciding that the array was suggestive. "[T]he array should not be arranged so that a particular individual stands out." W. LaFave J. Israel, Criminal Procedure § 7.4(e) at 589 n. 59 (1984). Compare Hull v. State, 581 So.2d 1202, 1204
(Ala.Cr.App. 1990) (photo spread containing black and white picture of accused and color pictures of the other subjects was impermissibly suggestive). Suggestiveness alone, however, did not require *Page 732 
the suppression of Kimsey's testimony. "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. UnitedStates, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247
(1968). "[T]he central question [is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neilv. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382,34 L.Ed.2d 401 (1972).
Kimsey was standing on the balcony of his apartment about 7:30 p.m. on October 9 when he observed a red car drive into the parking lot of the apartment complex. A man he identified as the appellant got out of the vehicle, looked around for a few seconds, and then walked between two buildings in the complex. The appellant was 20 to 25 feet away from Kimsey and the area was illuminated by street lights and apartment security lights. Kimsey became suspicious of the appellant's conduct and wrote down the tag number of the red automobile. A few minutes later, the appellant walked within a foot or two of Kimsey, and Kimsey was able to look directly at the appellant's face for about ten seconds.
Two days later, at 4:30 in the afternoon, Kimsey told Officer Gregory Lee, the apartment security guard, that he had observed a suspicious individual a few evenings earlier. He gave Lee the paper on which he had written the tag number of the vehicle appellant was driving. About 7:30 to 8:00 p.m. that same day, Kimsey saw the appellant again, and watched him for five minutes as he walked around the apartment complex. Then Kimsey notified Officer Lee that the individual he had previously told Lee about was in the area again. Officer Lee found the appellant, brought him back to Kimsey, and questioned him about his destination and purpose for being in the apartment complex. During this time, Kimsey observed the appellant for 15 to 20 seconds from a distance of two or three feet. Four or five days later, Kimsey was shown the photo spread and he chose the appellant's picture without hesitation.
Applying the "factors to be considered in evaluating the likelihood of misidentification" set forth in Neil v. Biggers,409 U.S. at 199, 93 S.Ct. at 382, and reaffirmed in Manson v.Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253,53 L.Ed.2d 140 (1977), we conclude that Kimsey's identification of the appellant was reliable despite the suggestive photographic array. Kimsey had three opportunities, two of them at close range, to view the appellant. It is obvious that Kimsey's attention was focused on the appellant since Kimsey was suspicious of the appellant and noted the tag number of the vehicle he was driving. Although the record does not contain any "description" of the appellant given by Kimsey, it is clear that Kimsey described the appellant with enough specificity to enable Officer Lee, the apartment security guard, to locate the appellant in the apartment complex and bring him back to Kimsey. Finally, Kimsey was positive about his photographic identification of the appellant less than a week later.
 II
The appellant argues that he was placed in double jeopardy by being prosecuted for two offenses arising from a single criminal act. He contends that the simultaneous receipt of both a vehicle and of firearms stolen from the same victim in the same theft constitutes but one offense. He cites State v.Goins, 705 S.W.2d 648, 651-52 (Tenn. 1986), for the proposition that "[t]he State may not divide a cache of stolen property received or concealed by a defendant by the number of victims of the thefts and thereby obtain that number of indictments absent some other evidence that identified goods have been received or concealed separately."
While this contention appears to have considerable merit, it was never raised below and is therefore waived on appeal.Bolden v. State, 568 So.2d 841, *Page 733 
844 (Ala.Cr.App. 1989). "The proper method to raise the issue of former jeopardy [is] by special plea and, in the absence of such a plea, the issue is not properly before the Court of Criminal Appeals." Hill v. State, 410 So.2d 431, 434
(Ala.Cr.App. 1981). "[T]he defense of double jeopardy . . . should be raised by a motion under [Rule 15.2, A.R.Crim.P.]." Committee Comments to Rule 15.2, A.R.Crim.P.
 III
The State presented evidence that a vehicle belonging to the appellant's ex-mother-in-law and the keys to that vehicle and three firearms belonging to the appellant's ex-father-in-law were stolen sometime between 9:00 a.m. and 3:00 p.m. on October 9. The appellant's ex-wife told the appellant of the theft sometime between 5:00 and 6:00 p.m. the same day. Later, between 7:00 and 7:30 p.m. that same evening, the appellant was driving the vehicle without the permission of the owner. When law enforcement officers opened the trunk of the vehicle, they found the three stolen firearms.
The appellant argues that the State presented no evidence that he "possessed" the guns in the trunk, and therefore that the evidence relating to his conviction for receiving stolen property in the second degree (the three firearms) was insufficient.
Section 13A-8-16, 1975 Code of Alabama, provides that the accused's "possess[ion of] goods or property which have been recently stolen . . . shall be prima facie evidence that he has the requisite knowledge or belief." The concept of "possession," for purposes of the receiving stolen property statute, implies control. "It is undoubtedly true that, in order to sustain a conviction for receiving stolen property, the defendant must be shown to have had a control over the property." Booker v. State, 151 Ala. 97, 99, 44 So. 56, 56
(1907). See also Milam v. State, 240 Ala. 314, 317,198 So. 863, 865 (1940) ("[t]he defendant must be shown to have had control over the property for an appreciable moment of time");Martin v. State, 461 So.2d 1340, 1342 (Ala.Cr.App.), cert. denied, 461 So.2d 1343 (Ala. 1984). However, "[a]ctual physical control is not necessary to establish possession. Possession is to be determined by examining all of the surrounding circumstances." Cheatham v. State, 431 So.2d 1350, 1354
(Ala.Cr.App. 1983).
Thus, we must determine whether the appellant's driving a recently stolen vehicle imports "control," and thereby "possession," of other goods that were stolen at the same time as the vehicle and that were found in the trunk of that vehicle. In Lawson v. State, 38 Ala. App. 322, 82 So.2d 812
(1955), the accused was the driver of a delivery truck containing stolen groceries. Although the case involved a prosecution for larceny rather than for receiving stolen property, the court noted that "[i]t is of course well settled that in a prosecution for larceny the unexplained possession of recently stolen goods raises an inference from which the jury may infer guilt." 38 Ala. App. at 323, 82 So.2d at 813. The court determined that possession of recently stolen goods
 "is not limited to actual manual control upon or about the person. If under one's power and dominion the thing is possessed. That the appellant had knowledge of the presence of the stolen groceries can reasonably be inferred from his possession and control of the truck. Certainly, it was for the jury to so determine in the absence of any evidence by the appellant tending to justify his technical possession of the groceries."
38 Ala. App. at 323, 82 So.2d at 813. The Lawson court found that power and dominion over the vehicle implied, in the absence of evidence to the contrary, possession of the contents of the vehicle. See also Boykin v. State, 398 So.2d 766, 769
(Ala.Cr.App.), cert. denied, 398 So.2d 771 (Ala. 1981) ("if the stolen property is under one's power and dominion, it is possessed by him"); English v. State, 38 Ala. App. 377,84 So.2d 673, 674 (1956) (accused "deemed in constructive possession of . . . recently stolen goods" found in his automobile). CompareIsbell v. State, 57 Ala. App. 444, 329 So.2d 133, cert. denied,295 Ala. 407, 329 So.2d 140 (1976). There, the accused was a passenger *Page 734 
in a car that belonged to a third party and that contained recently stolen guns. The court held that his mere presence in the vehicle was insufficient to support his conviction for receiving stolen property. "In the absence of a showing that he knew the guns to be in the car, knew them to be stolen and exercised some control over them, his presence in the car, standing alone, would not be sufficient for a conviction."57 Ala. App. at 452, 329 So.2d at 140.
"The defendant's constructive possession of the stolen property may be proved by circumstantial evidence." Cork v.State, 433 So.2d 959, 962 (Ala.Cr.App. 1983). Here, proof that the appellant was driving the car after it had been stolen constitutes circumstantial evidence of the fact that he had the keys — including the trunk key — which the State's evidence established had been stolen at the same time.
 "As opposed to anyone else, including the actual owner, he had control of the [vehicle] at the time in question. 'Possession of keys to a locked container may be enough to vest in the possessor control over the contents of the container.' People v. Peters, 43 A.D.2d 599, 348 N.Y.S.2d 786, 789 (1973). See also Christopher v. State, 639 S.W.2d 932, 935 (Tex.Cr.App. 1982). Here, the defendant's recent use of the [vehicle] and his possession of the key provide sufficient evidence of his control of the [vehicle] and knowledge of the stolen property contained inside."
Cork v. State, 433 So.2d at 961.
Most of the elements necessary to establish a prima facie case of receiving stolen property "are shown by circumstances from which the jury, using their everyday common sense, must draw their conclusion." Ingle v. State, 400 So.2d 938, 940
(Ala.Cr.App. 1981). In a prosecution for receiving stolen goods, "[c]ourts and juries must use common sense, common reason, and common observation as well as a common knowledge of the usual acts of men and women under given circumstances in considering the weight to be given evidence." Tombrello v.State, 431 So.2d 1355, 1358 (Ala.Cr.App. 1983).
Here, the jury could infer as a matter of common sense that some consideration usually passes between the thief and the receiver of stolen property; if the appellant was not the thief, then he paid the thief for the property he received. The jury could also conclude as a matter of common sense that the thief who transferred the vehicle to the appellant did not simply write off three valuable firearms in the trunk, but informed the appellant of their presence and negotiated an additional consideration for their inclusion.
Thus, from the fact that the appellant was driving an automobile recently stolen from his ex-in-laws, we think the State presented sufficient circumstantial evidence that the appellant knew of the presence in the trunk of other property also stolen during the same theft. See Beckley v. State,335 So.2d 244, 245 (Ala.Cr.App. 1976).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.